

Villanova University School of Law
Villanova University School of Law Digital Repository

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-21-2006

# Amer Trucking Assoc v. Governor NJ

Precedential or Non-Precedential: Precedential

Docket No. 04-2201

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"Amer Trucking Assoc v. Governor NJ" (2006). *2006 Decisions.* Paper 1499.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1499

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2201

———

AMERICAN TRUCKING ASSOCIATIONS, INC. and US
XPRESS, INC.,


v.


CHRISTINE TODD WHITMAN, in her official capacity as the
Governor of the State of New Jersey; JAMES WEINSTEIN, in
his official capacity as the Commissioner of the New Jersey
Department of Transportation; COL. CARSON DUNBAR, in
his official capacity as the Superintendent of the New Jersey
State Police; JOHN J. FARMER, JR., in his official capacity as
the Attorney General of the State of New Jersey,

Appellants

———

On Appeal from the United States District Court for the District
of New Jersey
(D.C. No. 00-489)
District Judge: Honorable Stanley R. Chesler

———

Argued September 26, 2005
Before: RENDELL, FUENTES, and GARTH, Circuit Judges.

(Opinion Filed: February 21, 2006)


Patrick DeAlmeida (Argued)

Office of the Attorney General of New Jersey
Department of Law & Public Safety
Richard J. Hughes Justice Complex
Trenton, NJ 08625

ATTORNEY FOR APPELLANTS

Janine G  Bauer, Esq.
416 Clark Street
South Orange, NJ  07079

ATTORNEY FOR AMICUS - APPELLANT,
Tri State Transportation

Trishka Waterbury, Esq.
Mason, Griffin & Pierson
101 Poor Farm Road
P.O. Box 391
Princeton, NJ  08542
ATTORNEY FOR AMICUS - APPELLANT,
NJ State League Mun.

Richard F. Ricci
Alix R. Rubin
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068

Robert S. Digges, Jr.  (Argued)
American Trucking Associations, Inc.
2200 Mill Road
Alexandria, VA 22314

ATTORNEYS FOR APPELLEES

_____

OPINION OF THE COURT

_____

FUENTES, <u>Circuit Judge</u>.

In 1999, in response to the threat to health and safety posed by large trucks on local roads, the New Jersey Department of Transportation adopted emergency highway safety regulations (the "Regulations") designed to detour some of those trucks away from local roads and congested areas. The Regulations require double-trailer truck combinations and 102-inch-wide tractor trailers (collectively, "restricted vehicles") traveling through New Jersey, with neither an origin nor a destination in the state, to use the national network of interstate highways (the "National Network")[1] rather than New Jersey state highways and local roads (the "New Jersey Network"). This case requires us to determine whether the Regulations discriminate against interstate commerce in violation of the dormant Commerce Clause. Because the Regulations favor instate businesses over those out-of-state businesses that are neither buying nor selling goods in New Jersey by imposing economic burdens on the out-of-state interests while not imposing similar burdens on the instate interests, we hold that the Regulations discriminate against interstate commerce. Furthermore, as there exist available nondiscriminatory alternatives, we hold that the Regulations violate the dormant Commerce Clause. We accordingly affirm the judgment of the District Court.

## I. Factual and Procedural Background

In the 1980s, in response to the trucking industry's desire to use 102-inch wide trucks and double-trailer truck combinations, the federal government required states to establish the National Network, a connected network of interstate highways to permit interstate travel by these vehicles. New Jersey complied with this directive, resulting in 545.7 miles of roads in New Jersey that contribute to the National Network.

---

[1] The National Network roads are designated at 23 C.F.R. Part 658 App. A. In New Jersey, that Network includes sections of I-76, I-78, I-80, I-95, I-195, I-278, I-280, I-287, I-295, I-676, N.J. 42, N.J. 81, U.S. 130, U.S. 322, N.J. 440, the New Jersey Turnpike, and the Atlantic City Expressway. <u>N.J. Admin. Code</u> § 16:32-1.4(a) (1999).

Years later, in response to the threat to health and highway safety posed by large trucks on local roads, the New Jersey Department of Transportation adopted the Regulations, which were designed to reroute large trucks onto the National Network. The Regulations require restricted vehicles that do not have an origin or destination in New Jersey to use the National Network while in New Jersey, except as necessary to access food, rest, repairs, and fuel. N.J. Admin. Code § 16:32-1.1 (1999). However, restricted vehicles engaged in purely intrastate commerce or in interstate commerce that includes an origin or destination in New Jersey are able to use both the National Network and the New Jersey Network. N.J. Admin. Code § 16:32-1.4. The New Jersey Network consists of roadways secondary to the National Network that often snake through populated areas and are heavy with non-commercial traffic. N.J. Admin. Code §16:32-1.5(a) (1999). Penalties for violating the Regulations include a mandatory fine of no more than $400 for the first violation, a mandatory fine of $700 for the second violation, and a mandatory fine of $1000 for each subsequent violation.

Soon after the adoption of the Regulations, plaintiffs American Trucking Associations, Inc. ("American Trucking") and US Xpress filed a complaint in the United States District Court for the District of New Jersey alleging that the Regulations violate the dormant Commerce Clause of the United States Constitution. U.S. Const. art. I, § 8 cl. 3. American Trucking is a non-profit national trucking trade association suing on behalf of its members. US Xpress, a Nevada corporation, is an interstate motor carrier based in Tennessee. The defendants are former New Jersey officials that the plaintiffs sued in their official capacities.

The plaintiffs sought an order declaring the Regulations unconstitutional and an order enjoining the defendants (the "state officials") from enforcing the Regulations. After a period of discovery, both parties filed motions for summary judgment, which the District Court denied. The judge hearing the motions determined that the Regulations are not facially discriminatory because, although "the Regulations [distinguish] between trucks with and without an origin or destination in New Jersey," they are applied "with equal force to all truck drivers." Am. Trucking Ass'ns, Inc. v. Whitman, 136 F. Supp. 2d 343, 350 (D.N.J. 2001). Though the District Court concluded that the Regulations are not

facially discriminatory, it denied summary judgment because an evidentiary record was needed to determine whether the Regulations impose costs and delays on out-of-state trucking. According to the District Court, "[e]vidence of a significant expense to out-of-state trucking not suffered by in-state trucking would demonstrate that the Regulations discriminate in their effect against out-of-state interests." Id. at 351.

In September 2003, the parties commenced a five-day bench trial before a different judge. During the trial, Dr. Lazar Spasovic, testifying for the state officials, stated that, despite a New Jersey Department of Transportation study demonstrating that the Regulations would force many interstate trucks to take longer and costlier routes when required to use the National Network rather than the New Jersey Network, the Regulations would not adversely affect interstate commerce. Spasovic based this conclusion on a theory that some truck drivers were using the New Jersey Network only to avoid tolls, even when that choice involved higher aggregate costs of time and fuel for those trucks. According to Spasovic, those interstate trucks would save money by using the National Network, and those savings would outweigh the additional costs the Regulations cause other interstate trucks; thus the Regulations would have a net positive impact.

The state officials also argued that, even if the Regulations were discriminatory, they do not violate the dormant Commerce Clause because there are no available non-discriminatory means with which to achieve the legitimate goal of decreasing truck traffic on local roads. Assistant Commissioner and State Planning Engineer Dennis Keck testified that a non-discriminatory statute that prohibited all restricted vehicles from using the New Jersey Network, except as necessary to reach New Jersey origins or destinations or for food, rest, repairs, and fuel, would be nearly impossible to enforce. Keck testified that such a statute would require law enforcement officials to stop trucks on the New Jersey Network randomly to ensure compliance with the statute, and to perform complex calculations to discern whether the trucks needed to be at that point on the New Jersey Network to reach a New Jersey destination or to reach the National Network from a New Jersey origin.

At the conclusion of the trial, the District Court held that the

5

Regulations violate the dormant Commerce Clause and accordingly enjoined the state officials from enforcing them. Am. Trucking Ass'ns, Inc. v. Whitman, No. 00-CV-489, 2004 WL 601659, at *11 (D.N.J. Mar. 24, 2004). The District Court found that Spasovic's conclusion was based on the unreasonable assumption that truck drivers were acting against their economic interest. Id. at *5-6. In other words, the District Court did not accept Spasovic's assertion that interstate truck drivers were using the New Jersey Network to avoid paying tolls even though those truck drivers paid more in fuel and increased travel time by taking local road detours. The District Court therefore rejected Spasovic's conclusion that the Regulations would result in a net positive economic impact by correcting the irrational behavior of many interstate truck drivers. Id. at *6. Moreover, the District Court found that, regardless of whether the Regulations provide a net positive economic impact, the evidence showed that the Regulations force many truckers to engage in conduct counter to their economic interests. Id. The District Court concluded that the Regulations are discriminatory in effect. Id. at *9-10.

Additionally, the District Court found that, although the Regulations advance the legitimate local purpose of improving highway safety, there are available non-discriminatory means to accomplish that goal. Id. at *10-11. Specifically, the District Court noted that the state officials could accomplish the same legitimate local purpose by prohibiting all restricted vehicles from using the New Jersey Network except as necessary to: 1) reach a New Jersey destination from the National Network; 2) reach the National Network from a New Jersey origin; or 3) access food, rest, fuel, or repairs. Id. at *11 n.11. Because a non-discriminatory alternative was available, the District Court held that the Regulations discriminate against interstate commerce in violation of the dormant Commerce Clause. Id. at *11.

The state officials timely filed a notice of appeal on April 23, 2003.

## II. Regulatory Background

First, we must consider the state law at issue. The Regulations, enacted in 1999, determine which roads may be used by restricted vehicles traveling in New Jersey. The Regulations describe their purpose as follows:

The New Jersey Department of Transportation has determined that it is in New Jersey's best interest to limit interstate through travel of large trucks to the National Network, the NJ Turnpike, and the Atlantic City Expressway. Large trucks restricted herein include 102-inch wide standard trucks and double trailer truck combinations. Interstate through travel for the purposes of this chapter shall be a trip with both an origin and destination outside of New Jersey. Reasonable access shall be permitted to terminals and to facilities for food, fuel, repairs and rest.

N.J. Admin. Code § 16:32-1.1 (1999).

A "double trailer-truck combination" is defined as "a truck tractor-semitrailer-trailer combination, and which meets the equipment length requirement as set forth in N.J.S.A. 39.3-84 and 23 CFR 658.13." N.J. Admin. Code § 16:32-1.2 (1999). The Regulations define "102-inch wide standard truck" as "a truck greater than 96 inches but not greater than 102 inches in width, exclusive of mirrors and other safety devices, and which meets the equipment length requirements as set forth in N.J.S.A. 39:3-84(3) and (4), as amended." Id. "Interstate through travel" is defined as "a trip with neither an origin nor destination in New Jersey." Id.

Under the Regulations, "double-trailer truck combinations and 102-inch wide standard trucks in interstate through travel may be operated in New Jersey only on the National Network . . . in addition to the New Jersey Turnpike, and the Atlantic City Expressway." N.J. Admin Code § 16:32-1.4(a). However, the Regulations allow that,

"[a] double-trailer truck combination is permitted access from [the National Network] to facilities providing food, fuel, repairs and rest, within one mile roadway distance from the designated system except upon those roads, highways, streets, public alleys or other thoroughfares which cannot safely accommodate a double-trailer truck combination and are so designated by the Department."

7

N.J. Admin Code § 16:32-1.6(c).

Thus, under the Regulations, restricted vehicles traveling through New Jersey with no origin or destination in New Jersey must use the National Network, and are prohibited from using the New Jersey Network except as necessary to access food, fuel, repairs or rest. Restricted vehicles engaged in intrastate travel or in interstate travel with an origin or destination in New Jersey have unlimited access to the New Jersey Network.

## III. Legal Analysis

### A. The Commerce Clause

The Commerce Clause gives Congress the power "to regulate Commerce . . . among the several States." U.S. Const. art. I, § 8 cl. 3. "Although the Clause thus speaks in terms of powers bestowed upon Congress, the Court has long recognized that it also limits the power of the States to erect barriers against interstate trade." Lewis v. B.T. Inv. Managers, Inc., 447 U.S. 27, 35 (1980). In other words, there is a "dormant" Commerce Clause "which limits state authority to regulate areas where Congress has not affirmatively acted to either authorize or forbid the challenged state activity." Harvey & Harvey, Inc. v. County of Chester, 68 F.3d 788, 796 (3d Cir. 1995) (internal quotation marks and citations omitted). Because Congress has neither prohibited nor authorized the highway safety regulations at issue here, we must determine whether the Regulations violate the dormant Commerce Clause.

The dormant Commerce Clause "prohibits the states from imposing restrictions that benefit in-state economic interests at out-of-state interests' expense, thus reinforcing 'the principle of the unitary national market.'" Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd., 298 F.3d 201, 210 (3d Cir. 2002) (quoting West Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 193 (1994)). The dormant Commerce clause therefore prohibits a state from impeding free market forces to shield in-state businesses from out-of-state competition. Id. A state law that discriminates against interstate commerce faces "a virtually per se rule of invalidity" under the dormant Commerce Clause. Philadelphia v. New Jersey,

8

437 U.S. 617, 624 (1978).

## B. The Appropriate Level of Scrutiny

To determine whether the Regulations violate the dormant Commerce Clause, the District Court applied the heightened scrutiny standard. The state officials argue that the District Court erred because, under American Trucking Ass'ns v. Larson, 683 F.2d 787 (3d Cir. 1982), all highway safety regulations are entitled to deferential treatment. (Defendants' Brief at 19-20, 22.)

We have previously stated that the level of scrutiny to be applied to a statute or regulation that affects interstate commerce is contingent upon whether the court finds that the statute or regulation is discriminatory. See Cloverland-Green, 298 F.3d at 210-11; Harvey & Harvey, 68 F.3d at 797; Old Coach Dev. Corp. v. Tanzman, 881 F.2d 1227, 1231 (3d Cir. 1989). There are two ways in which a statute could discriminate against interstate commerce and thus be subject to heightened scrutiny: on its face (interchangeably referred to as having a discriminatory purpose) or in effect.[2] See Old Coach, 881 F.2d at 1231; Norfolk S. Corp. v. Oberly, 822 F.2d 388, 400 (3d Cir. 1987). If a regulation discriminates against interstate commerce on its face or in effect, then heightened scrutiny applies. See Cloverland-Green, 298 F.3d at 210-11; Harvey & Harvey, 68 F.3d at 797. Under the heightened scrutiny standard, the State must demonstrate 1) that the statute serves a legitimate local interest, and 2) that this purpose

---

[2] In Norfolk S. Corp. v. Oberly, 822 F.2d 388 (3d Cir. 1987), we expressed some doubt about whether statutes that are discriminatory in effect truly merit the application of strict scrutiny. 822 F.2d at 400-01 n.18. However, this doubt was subsequently resolved by the Supreme Court's decision in C & A Carbone, Inc. v. Town of Clarkstown, 511 U.S. 383 (1994), in which it stated that a statute that did not explicitly seek to regulate interstate commerce but nonetheless did so "by its practical effect and design" was subject to heightened scrutiny. Id. at 394. We have since explicitly found that under Carbone and its progeny, "either purpose or effect will trigger strict scrutiny analysis." Harvey & Harvey, 68 F.3d at 798.

could not be served as well by available non-discriminatory means. See Cloverland-Green, 298 F.3d at 210-11; Harvey & Harvey, 68 F.3d at 797. If the statute at issue does not discriminate against interstate commerce, it is subjected to a balancing test whereby the statute must be upheld unless the burden imposed on interstate commerce is "clearly excessive in relation to the putative local benefits." Cloverland-Green, 298 F.3d at 211 (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)); Harvey & Harvey, 68 F.3d at 797. In Larson, however, we held that non-discriminatory highway safety statutes must be given a more deferential treatment, and may not be overturned absent a showing that the safety benefits are slight, problematic, or illusory. See Larson, 683 F.2d at 795

We find the state officials' contention that all highway safety regulations are entitled to deferential treatment to be without merit. The state officials misinterpret Larson, which explicitly limits its deferential standard to non-discriminatory highway safety regulations. Larson, 683 F.2d at 795. There is simply nothing in Larson that implies that the deferential standard adopted in Larson should be applied to discriminatory highway safety regulations. Moreover, in support of their argument, the state officials cite cases decided before C & A Carbone, Inc. v. Town of Clarkstown, 511 U.S. 383 (1994), in which the Supreme Court held that regulations that discriminate in effect and design are subject to the heightened scrutiny test. See 511 U.S. at 394; Harvey & Harvey, 68 F.3d at 798. Therefore, we agree with the District Court's conclusion that discriminatory highway safety regulations are subject to heightened scrutiny.[3]

---

[3]The amicus curiae brief submitted by Tri-State Transportation Campaign also makes a general argument against the application of the heightened scrutiny test to regulations that are merely discriminatory in effect. (See Brief for Amicus Curiae Tri-State Transportation Campaign, Inc. ("Tri-State Brief") at 1-10.) It argues that there is a difference between a tolerable effect on interstate commerce and an impermissible burden, and that applying heightened scrutiny to a regulation with an effect on interstate commerce ignores this distinction. (Id. at 6-10.) This argument fails because the District Court, echoing Third Circuit and Supreme Court precedent, did not apply heightened scrutiny to

## C. Whether the Regulations Are Discriminatory

At the summary judgment stage, when determining the appropriate level of scrutiny, the District Court found that the Regulations are not facially discriminatory.[4] Am. Trucking, 136 F. Supp. 2d at 350. The motion judge noted that the Regulations distinguish between trucks with and trucks without an origin or destination in New Jersey, but that the Regulations are not facially discriminatory because they "apply evenhandedly without regard to citizenship of the truck driver or owner." Id. Perhaps considering himself bound by the motion judge's ruling, the trial judge did not consider whether the Regulations are facially discriminatory. We conclude that they are.

The Regulations state that their purpose is "to limit interstate through travel of large trucks," defining "interstate through travel" as "a trip with both an origin and destination outside of New Jersey." N.J. Admin. Code § 16:32-1.1. The Regulations achieve this purpose by mandating that restricted vehicles engaged "in interstate through travel may be operated in New Jersey only on the National Network," except as necessary to access food, fuel, rest, or repairs. N.J. Admin. Code § 16:32-1.4(a).

The text of the Regulations explicitly distinguishes out-of-state trucks that are passing through New Jersey and imposes additional burdens on these trucks. The Regulations deny trucks of out-of-state businesses that pass through New Jersey access to 3600 miles of New Jersey Network roads. These out-of-state trucks are only exempt from this restriction under limited circumstances – namely, if they doing business in New Jersey that would require the dropping off or picking up of goods in New Jersey, or to access food, fuel, repairs, or rest. Meanwhile, trucks

---

the Regulations merely because they affect interstate commerce, but because they have a discriminatory effect.

[4]The question of whether a statute is discriminatory is a question of law, which this Court reviews de novo. See, e.g., Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. County, 112 F.3d 652, 663 (3d Cir. 1997); see also Nat'l Solid Wastes Mgmt. Ass'n v. Meyer, 63 F.3d 652, 656 (7th Cir. 1995).

doing business in New Jersey are allowed unlimited access to the New Jersey Network. As was demonstrated at trial by the state officials' own expert and a New Jersey Department of Transportation study, forcing trucks that are passing through New Jersey to use only the National Network imposes increased costs on those trucks.[5] (Appendix ("App.") at Da491; Plaintiffs' Supplemental Appendix ("Supp. App.") at Pa16-Pa22, Pa52-Pa57.) By granting trucks doing business in New Jersey unlimited access to the New Jersey Network while prohibiting trucks serving solely out-of-state interests from accessing the New Jersey Network, the Regulations explicitly impose costs on the citizens and businesses of other states while exempting New Jersey's own citizens and businesses from those same costs. For this reason, we find the Regulations facially discriminatory.

Our holding here is informed by the Supreme Court's reasoning in Granholm v. Heald, 125 S. Ct. 1885 (2005), in which the Supreme Court found unconstitutional New York statutes imposing additional burdens on out-of-state wineries seeking to ship wine directly to New York consumers.[6] In finding the statutes violated the dormant Commerce Clause, the Supreme Court noted that, "[t]ime and again this Court had held that, in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" Id. at 1895 (quoting Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of Ore., 511 U.S. 93, 99 (1994)). Here, the Regulations explicitly provide for different treatment of in-state and out-of-state economic interests by limiting the access that the latter interest has

[5]For example, the New Jersey Department of Transportation study in evidence showed that the trip from Philadelphia to upstate New York was longer in distance and time, and costlier in tolls and fuel, when the driver was forced to use the National Network instead of the New Jersey Network. (App. at Da491; Supp. App. at Pa16-Pa22.)

[6]In Granholm, the Supreme Court also invalidated on similar grounds Michigan statutes governing alcohol distribution. Granholm, 125 S. Ct. at 1896.

12

to New Jersey roads. It is immaterial that a limited exception is allowed for out-of-state trucks with an origin or destination in New Jersey because, as in Granholm, "[t]he suggestion of a limited exception for [out-of-state economic interests] does nothing to eliminate the discriminatory nature" of the Regulations. Id. at 1896. The Regulations' explicit distinction and consequent burdening of out-of-state economic interests requires that heightened scrutiny be applied.

Also relevant here is the Supreme Court's decision in Philadelphia v. New Jersey, which held that a New Jersey law that bans the importation of most "solid waste or liquid waste which originated or was collected outside the territorial limits of the State" violated the Commerce Clause. 437 U.S. at 618. In City of Philadelphia, the Court observed that "[on] its face, [the New Jersey law] imposes on out-of-state commercial interests the full burden of conserving the State's remaining remaining landfill space." Id. at 628. According to the state, the purpose of the landfill law was to stem the "threat to the quality of the environment of New Jersey," to protect the State's diminishing landfill sites. The law was also enacted because "the public health, safety and welfare require that the treatment and disposal within this State of all wastes generated outside of the State be prohibited." Id. at 625. The Supreme Court held that the purpose of the law would not be relevant to whether the statute was discriminatory because:

[T]he evil of protectionism can reside in legislative means as well as legislative ends. Thus, it does not matter whether the ultimate aim of [the statute] is to reduce the waste disposal costs of New Jersey residents or to save remaining open lands from pollution, for we assume New Jersey has every right to protect its residents' pocketbooks as well as their environment. And it may be assumed as well that New Jersey may pursue those ends by slowing the flow of all waste into the State's remaining landfills . . . . But whatever New Jersey's ultimate purpose, it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently. Both on its face and in its plain effect, [the statute in question] violates this principle of nondiscrimination.

13

Id. at 626-27.

Similarly, here, the Regulations, on their face, violate this notion of nondiscrimination.

Our holding also parallels our reasoning in Old Coach, in which we held that New Jersey laws providing for separate regulatory schemes for New Jersey land sales to New Jersey residents and for out-of-state land sales to New Jersey residents, imposing tighter and costlier restrictions on the latter, were discriminatory on their face. 881 F.2d at 1232. Like the Regulations here, the statutes at issue in Old Coach did not distinguish between businesses based on citizenship. Id. Regardless, the statutes in Old Coach were facially discriminatory because they explicitly imposed additional costs on interstate land sales that intrastate land sales were not subject to. Id. Similarly, by limiting the access that out-of-state trucks have to the New Jersey Network to only circumstances in which they have an origin or destination in New Jersey, while allowing New Jersey trucks unlimited access to the same network, the Regulations on their face impose additional costs on out-of-state economic interests that New Jersey economic interests are not required to bear.

Even if we were to find, as the District Court did, that the Regulations are not facially discriminatory, we agree with the District Court that the Regulations are discriminatory in effect. In finding that the Regulations have a negative impact on interstate commerce, the District Court gave a well-reasoned analysis of the facts in evidence and concluded that, based on a New Jersey Department of Transportation study, many truckers involved in interstate commerce with no origin or destination in New Jersey would be forced to take longer and costlier routes when forced to use the National Network rather than the New Jersey Network. Am. Trucking, 2004 WL 601659, at *5-6. Commercial interests which rely on imports from and exports to New Jersey are not subject to these increased costs. The District Court properly rejected Spasovic's conclusion that the Regulations would have a positive net economic impact on interstate trucking despite these added costs because it found no support for the assumption that truckers choose to act against their economic interest. As the District Court concluded, truck drivers act in their economic interest, and that interest is best served by their using the New

14

Jersey Network as opposed to the National Network when doing so results in a net gain of time and money. In these circumstances, the Regulations barring from the New Jersey Network interstate trucks with no origin or destination in New Jersey produce a negative, not a positive, impact on interstate commerce.

Moreover, the District Court's conclusion is consistent with Supreme Court precedent stating that statutes that increase out-of-state competitors' costs are subject to heightened scrutiny under the Commerce Clause. In Carbone, the Supreme Court found that an ordinance requiring that solid waste processed or handled within the town be processed or handled at the town's transfer station was discriminatory in effect and thus subject to heightened scrutiny. Carbone, 511 U.S. at 392. The Supreme Court determined that, although the ordinance's immediate effect was to direct local transport of solid waste to a designated site within the local jurisdiction, its economic effects were "interstate in reach" because, among other things, the requirements of the ordinance had the effect of driving up the cost for out-of-state interests to dispose of their solid waste. Carbone, 511 U.S. at 389. In American Trucking Ass'ns, Inc. v. Scheiner, 483 U.S. 266 (1987), the Supreme Court invalidated a state's flat tax levied on all trucks that used its roads because data showed that the fees imposed a cost per mile on interstate trucks that was nearly five times as heavy as the cost borne by local trucks, and did "not even purport to approximate fairly the cost or value of the use of Pennsylvania's roads." See Scheiner, 483 U.S. at 284-86, 290. In these cases, the Supreme Court interpreted the dormant Commerce Clause to invalidate "local laws that impose commercial barriers or discriminate against an article of commerce by reason of its origin or destination out of state." Carbone, 511 U.S. at 390; see also Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n, 125 S.Ct. 2419, 2423 (2005); Scheiner, 483 U.S. at 284. This is precisely what the Regulations do by discriminating against trucking services by reason of their out-of-state origin and destination.

Because the Regulations are discriminatory both on their face and in effect, the District Court did not err in applying heightened scrutiny.

**D.      The Availability of Nondiscriminatory Alternatives**

The state officials argue that, even if heightened scrutiny is

appropriate, the District Court erred in finding that there is an available non-discriminatory alternative to the Regulations that would accomplish the goal of improving highway safety by reducing the number of restricted vehicles on the New Jersey Network. We review the District Court's finding of an available non-discriminatory alternative for clear error. See Atl. Coast, 112 F.3d at 663, 665.

The District Court found that a non-discriminatory alternative was available in the form of a regulation that would prohibit all trucks, regardless of origin or destination, from using the New Jersey Network except as needed to reach the National Network from a New Jersey origin, to reach a New Jersey destination from the National Network, or to access food, rest, fuel, or repairs. Am. Trucking, 2004 WL 601659, at *6-7. The state officials argue that this alternative would be impossible to enforce because: 1) it would require police to stop restricted vehicles on the New Jersey Network randomly to determine compliance with the statute, and 2) such a determination would require the officer making the stop to make difficult calculations regarding whether the truck needed to be on that road to reach a specific New Jersey destination from the National Network or to access the National Network from a New Jersey origin.

It was not clear error for the District Court to reject this argument and to find that a non-discriminatory alternative was available. Both the Regulations and the non-discriminatory alternative would require that the police randomly stop trucks on the New Jersey Network to ensure compliance with the applicable law. Moreover, as the District Court noted, the police are regularly entrusted with the responsibility to make complex determinations when stopping a vehicle to ensure compliance with the law, such as the "nuanced determinations" inherent in finding probable cause or the calculations necessary for the enforcement of similar needs-based exemptions to other highway regulations. Id. The Regulations themselves would have involved such determinations in order to allow interstate trucks to leave the National Network to the extent necessary for fuel, food, rest, or repairs.

The District Court's conclusion that a non-discriminatory alternative was available was based on solid reasoning and grounded in the evidence. This is a far cry from clear error, in

16

which a district court's finding is "completely devoid of minimum evidentiary support displaying some hue of credibility" or bears "no rational relationship to the supporting evidentiary data." Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 104 (3d Cir. 1981) (quotation marks and citation omitted). We therefore affirm the District Court's determination that the Regulations do not survive heightened scrutiny.

## IV.  Conclusion

For the reasons stated above, we affirm the District Court's decision holding that the Regulations violate the Commerce Clause of the United States Constitution and its decision to enjoin enforcement of the Regulations.