(Slip Opinion)  OCTOBER TERM, 2004  1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## AMERICAN TRUCKING ASSOCIATIONS, INC., ET AL. *v.* MICHIGAN PUBLIC SERVICE COMMISSION ET AL.

### CERTIORARI TO THE COURT OF APPEALS OF MICHIGAN

No. 03–1230.   Argued April 26, 2005—Decided June 20, 2005

Petitioners, a trucking company engaged in both interstate and intrastate hauling and a trucking association, asked Michigan courts to invalidate the State's flat $100 annual fee imposed on trucks engaged in intrastate commercial hauling, see Mich. Comp. Laws Ann. §478.2(1), claiming that it discriminates against interstate carriers and imposes an unconstitutional burden on interstate trade because trucks carrying both interstate and intrastate loads engage in less intrastate business than trucks carrying only intrastate loads. The State Court of Claims rejected the claim, holding that, because the fee is regulatory and intended for the Michigan Motor Carrier Act's administration, it is not amenable to apportionment; that it is an appropriate exercise of the State's police power; and that it does not implicate the Commerce Clause because it falls only on intrastate commerce. The State Court of Appeals affirmed, and the State Supreme Court declined review.

*Held:* Michigan's fee does not violate the dormant Commerce Clause. That Clause prevents a State from "jeopardizing the welfare of the Nation as a whole" by "plac[ing] burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear." *Oklahoma Tax Comm'n* v. *Jefferson Lines, Inc.*, 514 U. S. 175, 180. Applying this Court's dormant Commerce Clause principles and precedents here, nothing in §478.2(1) offends the Commerce Clause. The flat fee is imposed only on intrastate transactions. It does not facially discriminate against interstate or out-of-state activities or enterprises. It applies evenhandedly to all carriers making domestic journeys and does not reflect an effort to tax activity taking place outside of the State. Nothing in this Court's case law suggests that such a neutral, locally focused fee or tax is inconsistent with the

dormant Commerce Clause. That is not surprising, since States impose numerous flat fees on local business and service providers, *e.g.,* insurers and auctioneers. The Constitution neither displaces States' authority to shelter their people from health and safety menaces nor unduly curtails their power to lay taxes to support state government. The record, moreover, shows no special circumstances suggesting that Michigan's fee operates as anything other than an unobjectionable exercise of the State's police power. Neither does it show that the flat assessment unfairly discriminates against interstate truckers. Because the costs the fee seeks to defray, *e.g.,* those of regulating vehicular size and weight, would seem more likely to vary per truck or per carrier than per-mile traveled, a per-truck, rather than a per-mile, assessment is likely fair. And petitioners provide no details of their preferred alternative miles-traveled system or point to evidence of its practicality. Nor is there any reason to infer that the State's lump-sum levy on purely local activity erects an impermissible discriminatory roadblock. *American Trucking Assns., Inc.* v. *Scheiner*, 483 U. S. 266, distinguished. As for petitioners' "internal consistency" argument—that if every State did the same as Michigan, an interstate trucker doing local business in multiple States would have to pay a fee of several hundred or thousand dollars—any interstate firm with local outlets normally expects to pay local fees uniformly assessed on all those engaging in local business. Pp. 3–9.

255 Mich. App. 589, 662 N. W. 2d 784, affirmed.

BREYER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, SOUTER, and GINSBURG, JJ., joined. SCALIA, J., and THOMAS, J., filed opinions concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 03–1230

AMERICAN TRUCKING ASSOCIATIONS, INC. AND USF HOLLAND, INC., PETITIONERS *v.* MICHIGAN PUBLIC SERVICE COMMISSION ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEALS OF MICHIGAN

[June 20, 2005]

JUSTICE BREYER delivered the opinion of the Court.

In this case, we consider whether a flat $100 fee that Michigan charges trucks engaging in intrastate commercial hauling violates the dormant Commerce Clause. We hold that it does not.

## I

A subsection of Michigan's Motor Carrier Act imposes upon each motor carrier "for the administration of this act, an annual fee of $100.00 for each self-propelled motor vehicle operated by or on behalf of the motor carrier." Mich. Comp. Laws Ann. §478.2(1) (West 2002). The provision assesses the fee upon, and only upon, vehicles that engage in intrastate commercial operations—that is, on trucks that undertake point-to-point hauls between Michigan cities. See *Westlake Transp., Inc.* v. *Michigan Pub. Serv. Comm'n*, 255 Mich. App. 589, 592–594, 662 N. W. 2d 784, 789 (2003). Petitioners, USF Holland, Inc., a trucking company with trucks that engage in both interstate and intrastate hauling, and the American Trucking Associations, Inc. (ATA), asked the Michigan courts to invali-

date the provision. Both petitioners told those courts that trucks that carry *both* interstate *and* intrastate loads engage in intrastate business less than trucks that confine their operations to the Great Lakes State. Hence, because Michigan's fee is flat, it discriminates against interstate carriers and imposes an unconstitutional burden upon interstate trade.

The Michigan Court of Claims rejected the carriers' claim for three reasons. First, the $100 fee "is regulatory and intended" for the Motor Carrier Act's administration, which includes "regulation of vehicular size and weight, insurance requirements and safety standards." App. to Pet. for Cert. 44a. Such a fee "is not amenable to a fee structure based on apportionment by usage rates." *Ibid.* Second, the fee reflects a "legitimate expression of the [S]tate's concern that the welfare of its citizens be protected," and hence an appropriate exercise of the State's police power. *Ibid.* Third, the fee does not implicate the Commerce Clause because it falls only on intrastate, not interstate, commerce. *Id.*, at 45a.

The Michigan Court of Appeals affirmed. It did not agree that the intrastate nature of §478.2(1) sheltered the fee from Commerce Clause scrutiny. 255 Mich. App., at 617–619*,* 662 N. W. 2d, at 802. Nonetheless, the court rejected the truckers' claim because the statute "regulates evenhandedly," *id.*, at 621, 662 N. W. 2d, at 804, and because the record lacked any "evidence that any trucking firm's route choices [were] affected by the imposition of the fee," *id.*, at 621, 662 N. W. 2d, at 803–804. Rather, the record indicated that any "effect . . . on interstate commerce is incidental," rendering the truckers' claim of discrimination "a matter of pure speculation." *Ibid.*

The Michigan Supreme Court denied petitioners leave to appeal. *Westlake Transp., Inc.* v. *Michigan Pub. Serv. Comm'n*, ___ Mich. ___, 673 N. W. 2d 752 (2003). We granted their petition for certiorari and consolidated the

case with *Mid-Con Freight Systems, Inc.* v. *Michigan Pub. Serv. Comm'n*, No. 03–1234, a case in which interstate truckers sought review of a separate state motor carrier fee. We now affirm the Michigan court's judgment sustaining §478.2(1).

## II

Our Constitution "was framed upon the theory that the peoples of the several states must sink or swim together." *Baldwin* v. *G. A. F. Seelig, Inc.,* 294 U. S. 511, 523 (1935). Thus, this Court has consistently held that the Constitution's express grant to Congress of the power to "regulate Commerce . . . among the several States," Art. I, §8, cl. 3, contains "a further, negative command, known as the dormant Commerce Clause," *Oklahoma Tax Comm'n* v. *Jefferson Lines, Inc.*, 514 U. S. 175, 179 (1995), that "create[s] an area of trade free from interference by the States," *Boston Stock Exchange* v. *State Tax Comm'n,* 429 U. S. 318, 328 (1977) (internal quotation marks omitted). This negative command prevents a State from "jeopardizing the welfare of the Nation as a whole" by "plac[ing] burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear." *Jefferson Lines, supra*, at 180.

Thus, we have found unconstitutional state regulations that unjustifiably discriminate on their face against out-of-state entities, see *Philadelphia* v. *New Jersey,* 437 U. S. 617 (1978), or that impose burdens on interstate trade that are "clearly excessive in relation to the putative local benefits," *Pike* v. *Bruce Church, Inc.,* 397 U. S. 137, 142 (1970). We have held that States may not impose taxes that facially discriminate against interstate business and offer commercial advantage to local enterprises, see, *e.g., Oregon Waste Systems, Inc.* v. *Department of Environmental Quality of Ore.,* 511 U. S. 93, 99–100 (1994), that improperly apportion state assessments on transactions with out-

of-state components, *Central Greyhound Lines, Inc.* v. *Mealey,* 334 U. S. 653 (1948), or that have the "inevitable effect [of] threaten[ing] the free movement of commerce by placing a financial barrier around the State," *American Trucking Assns., Inc.* v. *Scheiner,* 483 U. S. 266, 284 (1987).

Applying these principles and precedents, we find nothing in §478.2(1) that offends the Commerce Clause. To begin with, Michigan imposes the flat $100 fee only upon intrastate transactions—that is, upon activities taking place exclusively within the State's borders. Section 478.2(1) does not facially discriminate against interstate or out-of-state activities or enterprises. The statute applies evenhandedly to all carriers that make domestic journeys. It does not reflect an effort to tax activity that takes place, in whole or in part, outside the State. Nothing in our case law suggests that such a neutral, locally focused fee or tax is inconsistent with the dormant Commerce Clause.

This legal vacuum is not surprising. States impose numerous flat fees upon local businesses and service providers, including, for example, upon insurers, auctioneers, ambulance operators, and hosts of others. See, *e.g.,* Wyo. Stat. §33–36–104 (Lexis 2003); S. C. Code Ann. §38–7–10 (West 2002). Although we have "long since rejected any suggestion that a state tax . . . affecting interstate commerce is immune from Commerce Clause scrutiny because it attaches only to a 'local' or intrastate activity," *Commonwealth Edison Co.* v. *Montana,* 453 U. S. 609, 615 (1981), we have also made clear that the Constitution neither displaces States' authority "to shelter [their] people from menaces to their health or safety," *D. H. Holmes Co.* v. *McNamara,* 486 U. S. 24, 29 (1988) (internal quotation marks omitted), nor "unduly curtail[s]" States' power "to lay taxes for the support of state government," *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U. S. 33, 48 (1940).

The record, moreover, shows no special circumstance suggesting that Michigan's fee operates in practice as anything other than an unobjectionable exercise of the State's police power. To the contrary, as the Michigan Court of Appeals pointed out, the record contains little, if any, evidence that the $100 fee imposes any significant practical burden upon interstate trade. See 255 Mich. App., at 620–622*,* 662 N. W. 2d, at 803–804. The record does show, for example, that some interstate trucks "top off" some interstate hauls with intrastate pickups and deliveries. See Brief for Intervening Plaintiffs-Appellants in Nos. 226052, 226122 (Ct. App. Mich.), Exh. 3, Affidavit of James C. Crozier ¶7 (licensing and fuel manager of TNT Holland Motor Express, Inc. describing this practice). But it does not tell us the answers to such questions as: How often does "topping off" occur across the industry? Does the $100 charge make a difference by significantly discouraging interstate carriers from engaging in "topping off"? Does the possibility of obtaining a 72-hour intrastate permit for $10 alleviate the alleged problem? See §478.2(3); see also Brief for Respondents 2, n. 3 (4,928 temporary permits were issued in 2004). If the fees ($100 and $10) discourage "topping off," does that *local* commercial effect make a significant *interstate* difference? Would a variable fee (of the kind the truckers advocate) eliminate such difference? The minimal facts in the record tell us little about these matters. Compare App. 60–61, Supplemental Affidavit of Thomas R. Lonergan ¶10(e) (official of the Michigan Public Service Commission stating that topping off is rare for most interstate carriers because it disrupts schedules and shipping patterns), with Reply Brief for Intervening Plaintiffs-Appellants in Nos. 226122, 226137 (Ct. App. Mich.), Exh. A, Supplemental Affidavit of James C. Crozier ¶6 (TNT Holland frequently tops off interstate loads). And at oral argument, ATA conceded the absence of record facts that empirically could show that the $100

fee significantly deters interstate trade.  Tr. of Oral Arg. 5.

Neither does the record show that the flat assessment unfairly discriminates against interstate truckers.  The fee seeks to defray costs such as those of regulating "vehicular size and weight," of administering "insurance require-ments," and of applying "safety standards."  App. to Pet. for Cert. 44a.  The bulk of such costs would seem more likely to vary per truck or per carrier than to vary per-mile traveled.  See 255 Mich. App., at 612–617, 662 N. W. 2d, at 799–801.  And that fact means that a per-truck, rather than a per-mile, assessment is likely fair.  Cf. *Jefferson Lines*, 514 U. S., at 199 (rejecting taxpayer's discrimination claim in part because "miles traveled within the State sim-ply are not a relevant proxy for the benefit conferred upon the parties to a sales transaction").  Nothing in the record suggests the contrary.

Nor would an effort to switch the manner of fee assess-ment—from lump sum to, for example, miles traveled—be burden free.  The record contains an affidavit, sworn by a Michigan Public Service Commission official, that states that to obtain the same revenue (about $3.5 million) through a per-mile fee would require the State to create a "data accumulation system" capable of separating out intrastate hauls and determining their length, and to develop related liability, billing, and auditing mecha-nisms.  App. 64, Second Supplemental Affidavit of Thomas R. Lonergan ¶2.  This affidavit, on its face, suggests that the game is unlikely to be worth the candle.  While peti-tioners argue the contrary, they do not provide the details of their preferred alternative administrative system nor point to record evidence showing its practicality.   See *Jefferson Lines*, *supra,* at 195 (State is not required to use a particular apportionment formula just because it may be "possible" to do so).

Petitioners insist that they do not need empirically to demonstrate the existence of a burdensome or discrimina-

tory impact upon interstate trucking, or (presumably) the unfairness of the assessment in relation to defrayed costs, or (presumably) the administrative practicality of the alternatives. They say that our earlier case, *American Trucking Assns., Inc.* v. *Scheiner,* 483 U. S. 266 (1987), requires invalidation of the $100 flat fee, even in the absence of such proof. We disagree.

In *Scheiner*, this Court invalidated a flat $25 "marker fee" and a flat "axle tax" that Pennsylvania levied upon all trucks (interstate and intrastate) that used its roads, including trucks that merely crossed Pennsylvania's borders to transport, say, Ohio goods to New Jersey customers. See *id.,* at 273–275. Data showed that the fees imposed a cost per mile on interstate trucks that was approximately "five times as heavy as the cost per mile borne by local trucks." *Id.*, at 286. The assessments largely helped to raise revenue "to improve and maintain [the State's] highways and bridges," *id.*, at 270, thereby helping to cover costs likely to vary significantly with truck-miles traveled, see *ibid.* And the assessments did "not even purport to approximate fairly the cost or value of the use of Pennsylvania's roads." *Id.,* at 290. In light of these considerations, Pennsylvania's lump-sum taxes "threaten[ed] the free movement of commerce by placing a financial barrier around the State of Pennsylvania." *Id.*, at 284. We concluded that "[i]f each State imposed flat taxes for the privilege of making commercial entrances into its territory, there [was] no conceivable doubt that commerce among the States would be deterred." *Ibid.*

The present fee, as we have said, taxes purely local activity; it does not tax an interstate truck's entry into the State nor does it tax transactions spanning multiple States. See 255 Mich. App., at 592–594, 662 N. W. 2d, at 789. We lack convincing evidence showing that the tax deters, or for that matter discriminates against, interstate activities. See *supra*, at 5. Nor is the tax one that, on its

face, would seem to call for an assessment measured per mile rather than per truck. See *supra*, at 6. Consequently, we lack any reason to infer that Michigan's lump-sum levy erects, as in *Scheiner,* an impermissible discriminatory road block.

Petitioners add that Michigan's fee fails the "internal consistency" test—a test that we have typically used where taxation of interstate transactions are at issue. Generally speaking, that test asks, "What would happen if all States did the same?" See, *e.g., Goldberg* v. *Sweet,* 488 U. S. 252, 261 (1989); *Jefferson Lines*, *supra,* at 185 (test looks to the structure of the tax to see whether its identical application by every State "would place interstate commerce at a disadvantage as compared with commerce intrastate"). We must concede that here, as petitioners argue, if all States did the same, an interstate truck would have to pay fees totaling several hundred dollars, or even several thousand dollars, were it to "top off" its business by carrying local loads in many (or even all) other States. But it would have to do so only because it engages in *local* business in all those States. An interstate firm with local outlets normally expects to pay local fees that are uniformly assessed upon all those who engage in local business, interstate and domestic firms alike. See, *e.g., Commonwealth Edison*, 453 U. S., at 623–624 (dormant Commerce Clause does not seek "to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing business" (internal quotation marks omitted)); cf. *Jefferson Lines*, *supra*, at 187–188 (in context of sales tax, "the Commerce Clause does not forbid the actual assessment of a succession of taxes by different States on distinct events as the same tangible object flows along"). A motor carrier is not special in this respect.

In sum, petitioners have failed to show that Michigan's fee, which does not seek to tax a share of interstate trans-

actions, which focuses upon local activity, and which is assessed evenhandedly, either burdens or discriminates against interstate commerce, or violates the Commerce Clause in any other relevant way. See *Complete Auto Transit, Inc.* v. *Brady*, 430 U. S. 274, 279 (1977) (noting that a tax will be sustained where it is applied to an activity with a "substantial nexus" to the taxing State; where, if applied to interstate activity, it is "fairly apportioned"; where it does not discriminate; and where it is "fairly related to the services provided").

For these reasons, the judgment of the Michigan Court of Appeals is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 03–1230

———————

## AMERICAN TRUCKING ASSOCIATIONS, INC. AND USF HOLLAND, INC., PETITIONERS *v.* MICHIGAN PUBLIC SERVICE COMMISSION ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEALS OF MICHIGAN

[June 20, 2005]

JUSTICE SCALIA, concurring in the judgment.

Michigan imposes a flat fee on trucks that engage in purely intrastate commercial operations. I agree with the Court that this fee does not violate the negative Commerce Clause. Unlike the Court, *ante,* at 3–4, 8–9, I reach that determination without adverting to various tests from our wardrobe of ever-changing negative Commerce Clause fashions: the balancing approach from *Pike* v. *Bruce Church, Inc.,* 397 U. S. 137 (1970), the four-factor test from *Complete Auto Transit, Inc.* v. *Brady,* 430 U. S. 274 (1977), and the internal-consistency test from cases such as *American Trucking Assns., Inc.* v. *Scheiner,* 483 U. S. 266 (1987). Instead, I ask whether the fee "facially discriminates against interstate commerce" and whether it is "indistinguishable from a type of law previously held unconstitutional by this Court." *West Lynn Creamery, Inc.* v. *Healy,* 512 U. S. 186, 210 (1994) (SCALIA, J., concurring in judgment). As the Court correctly concludes, Michigan's fee meets neither of those conditions. It does not facially discriminate against interstate commerce, *ante,* at 4, and it is distinguishable from petitioners' best analogue, the fees invalidated in *Scheiner,* which applied to interstate trucks even when they engaged in *no* intrastate business, *ante,* at 7–8.

# SUPREME COURT OF THE UNITED STATES

———————

No. 03–1230

———————

AMERICAN TRUCKING ASSOCIATIONS, INC. AND USF HOLLAND, INC., PETITIONERS *v.* MICHIGAN PUBLIC SERVICE COMMISSION ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEALS OF MICHIGAN

[June 20, 2005]

JUSTICE THOMAS, concurring in the judgment.

I would affirm the judgment of the Michigan Court of Appeals because "'[t]he negative Commerce Clause has no basis in the text of the Constitution, makes little sense, and has proved virtually unworkable in application,' *Camps Newfound/Owatonna, Inc.* v. *Town of Harrison,* 520 U. S. 564, 610 (1997) (THOMAS, J., dissenting), and, consequently, cannot serve as a basis for striking down a state statute." *Hillside Dairy Inc.* v. *Lyons,* 539 U. S. 59, 68 (2003) (THOMAS, J., concurring in part and dissenting in part).