**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-2126**

BRAD R. JOHNSON,

                Plaintiff - Appellant,

        v.

COUNTY OF HORRY, SOUTH CAROLINA; JANET BROWN; M. LOIS
EARGLE; TIM CHRISTOPHER; PAUL ABAJIAN,

                Defendants - Appellees.

Appeal from the United States District Court for the District of
South Carolina, at Florence.  Terry L. Wooten, District Judge.
(4:06-cv-02570-TLW)

Argued:  December 1, 2009           Decided:  January 5, 2010

Before MOTZ, DUNCAN, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Stuart M. Axelrod, AXELROD & ASSOCIATES, Myrtle Beach, South
Carolina, for Appellant.  Jerome Scott Kozacki, WILLCOX BUYCK &
WILLIAMS, PA, Florence, South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The appellant, Brad Johnson, filed this suit against Horry County, South Carolina and employees in the County Auditor's Office, including: Janet Brown, an administrative assistant, M. Lois Eargle, the county auditor, and Tim Christopher, an administrative assistant. Johnson also sued Paul Abajian, an Horry County police officer. Johnson filed suit against Eargle, Brown, Johnson and Officer Abajian in their individual, not official, capacities. Johnson asserted claims for money damages pursuant to 42 U.S.C. § 1983 based on the County's enforcement of state motor vehicle registration laws. Johnson also sought a declaratory judgment that the statutes at issue, S.C. Code Ann. §§ 56-3-150(B) & 160 (collectively, "the vehicle registration statutes"), were unconstitutional on their face and as applied. Specifically, Johnson alleged that the statutes violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Privileges and Immunities Clause (Art. IV, § 2, Cl. 1) of the United States Constitution, and the dormant Commerce Clause found in Article I of the United States Constitution. His claims arising under § 1983 were based on his contention that the defendants improperly executed and enforced the unconstitutional vehicle registration statutes.

The District Court for the District of South Carolina granted the defendants' motion for summary judgment on all

2

issues and denied Johnson's motion for partial summary judgment. Finding that the appellant's arguments lack merit, we affirm.

## I.  BACKGROUND

From June 2003 to January 7, 2005, Johnson lived in North Carolina and commuted to his job at Francis Marion University located in Florence, South Carolina.[1]  J.A. 195.  In March 2004 Johnson purchased two residential rental properties in Horry County and he visited at least one of these approximately 15 times per month.  J.A. 363.  By his own admission, Johnson was a resident and domiciliary of South Carolina from January 7, 2005 until April 22, 2007, which he alleges was necessitated under threat of incarceration by Horry County's unlawful enforcement of the vehicle registration statutes.  J.A. 195.

As part of an increased effort to collect personal property taxes on motor vehicles determined to be in violation of the

---

[1] Although the parties apparently do not dispute that Johnson's residence and domicile were in Illinois during this time period, the record is confusing on this point.  Although Johnson stated in an affidavit that he was a resident of Illinois, J.A. 195, he stated in that same affidavit that "at all times relevant to the allegations he was employed "for academic year 2003-04 (and beyond)" by Francis Marion University in Florence, South Carolina and "resided [in] . . . Oak Island, NC from June 2003 through . . . January 7, 2005."  J.A. 196 (emphasis added).  Nonetheless, whether Johnson was a resident of Illinois or North Carolina prior to becoming a resident and domiciliary of South Carolina in January 2005 has no effect on the result in this case.

vehicle registration statutes, the Horry County Auditor's Office notified Johnson in July 2004 that he may be in violation and warned of potential criminal prosecution. J.A. 124-25. Johnson received a second letter on September 17, 2004, stating that the Auditor's Office had received delivery confirmation of its July 2004 letter and asked that he contact the office immediately. In early October 2004 Eargle prepared a sworn affidavit declaring that Johnson was in violation of the vehicle registration statutes. On October 11, 2004, Johnson received a letter from a magistrate judge alleging a violation of the statutes and threatening criminal action unless he contacted the magistrate court. Johnson called the magistrate who advised him to speak with Eargle, which he did in an effort to explain his living and working arrangements.

On January 7, 2005, Johnson met with Officer Abajian at one of Johnson's rental properties. At the meeting Officer Abajian instructed Johnson to register his vehicle with the South Carolina Department of Motor Vehicles and obtain a South Carolina driver's license. Johnson was not taken into custody, but, allegedly under duress, immediately took the steps necessary to register his vehicle. He then filed the present challenge to the vehicle registration statutes.

4

## II.  ANALYSIS

The district court determined that Johnson's claims concerning the unconstitutionality of the vehicle registration statutes were without merit, both facially and as applied.  As an alternative basis for its decision, the district court also concluded that the individual defendants had qualified immunity from Johnson's claims arising under 42 U.S.C. § 1983 "because a reasonable official would not have been cognizant that his actions - enforcing facially valid statutes – violated any of the constitutional rights asserted by the plaintiff."  J.A. 371. Finally, the district court granted summary judgment to Horry County because Johnson failed to identify an Horry County policy that could result in liability.

We review a district court's grant of summary judgment de novo, "viewing the facts in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party."  Garofolo v. Donald B. Heslep Assocs., Inc., 405 F.3d 194, 198 (4th Cir. 2005).  A grant of summary judgment is warranted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).[2]  "[A]s a practical matter, we recognize that summary judgment may be particularly appropriate given the circumstances, because it is favored as a mechanism to secure the just, speedy and inexpensive determination of a case, where its proper use can avoid the cost of a trial."  JKC Holding Co. LLC v. Washington Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Thompson Everett, Inc. v. Nat'l Cable Advert., L.P., 57 F.3d 1317, 1322-23 (4th Cir. 1995)).

The South Carolina vehicle registration statutes provide, in part, as follows:

> The vehicle of a nonresident must be registered and licensed pursuant to this chapter upon the earlier of a nonresident's:
> (1) subsequent establishment of domicile in this State; or
> (2) operation of the vehicle in this State for an accumulated period exceeding one hundred fifty days.

S.C. Code Ann. § 56-3-150(B).

> Every foreign vehicle moved into this State the owner of which is a resident of this State immediately becomes liable for registration and license under the provisions of this chapter, and for the purpose of this section, the term "resident of this State" shall include every person who moves temporarily or permanently into this State for the purpose of engaging in any business, profession or employment.

S.C. Code Ann. § 56-3-160.

---

[2] Due to amendments to the Federal Rules of Civil Procedure effective December 1, 2009, this provision is now located in Fed. R. Civ. P. 56(c)(2).

Johnson contends that the statutes violate the Equal Protection Clause and the Privileges and Immunities Clause because "they facially treat residents differently from nonresidents . . . and facially burden every nonresident who enters and leaves South Carolina." Br. of Appellant at 29 (quotations omitted). In his First Amended Complaint Johnson asserts that

> based upon the plain meaning of S.C. Code Ann. § 56-3-160, when a legal resident of another state (i.e., an [sic] S.C. nonresident) moves across the S.C. state line operating a motor vehicle, owned by the S.C. nonresident and displaying valid non-S.C. car-tags, the S.C. nonresident/owner (a) is deemed (legal fiction created) a S.C. legal resident/owner and (b) is thereby required to immediately (1) register and license his vehicle . . . .

J.A. 16.[3]

Johnson asserts that the vehicle registration statutes prohibit him from residing in North Carolina and traveling to South Carolina for work because, once he does so in excess of 150 days, he becomes subject to the registration and licensing requirements of S.C. Code Ann. § 56-3-150(B). With respect to the Equal Protection Clause, Johnson argues that he "is

---

[3] Johnson's characterization of the statute is confusing. The plain language of the statute means that any resident of South Carolina, either a long-time resident or one who has moved there temporarily or permanently, must register and license any vehicle registered in another state once it is brought to South Carolina.

currently in fear of criminal prosecution by North Carolina law enforcement persons because [he] cannot comply with North Carolina Law (requiring registration and licensing of [his] motor vehicles in North Carolina) and remain in compliance with" the vehicle registration statutes. Br. of Appellant at 41. Accordingly, Johnson says "that under threat of incarceration, [he] was forced to change [his] legal residence and domicile" to South Carolina from Illinois. Id.

There is a serious and dispositive flaw in Johnson's analysis. S.C. Code Ann. § 56-3-150(A) provides as follows:

> A foreign privately owned and operated passenger vehicle of a nonresident, otherwise subject to registration and license as provided by this chapter, may be operated within this State without being registered and licensed pursuant to this chapter, subject to the conditions that at all times when operated in this State the vehicle:
>
> (1) is duly registered or licensed in the state, territory, district, or country of residence of the owner; and
>
> (2) has displayed on it a valid registration card and registration or license plate or plates.

(Emphasis added). The statute thus "provides a general exemption from the registration requirement for '[a] foreign privately-owned-and-operated passenger vehicle of a nonresident,'" United States v. Johnson, 256 F.3d 214, 216 (4th Cir. 2001) (quoting § 56-3-150), so long as the vehicle at issue is registered or licensed in the owner's state of residence.

8

Although Johnson was either a resident of North Carolina or Illinois at the time of the County's enforcement of the vehicle registration statutes, see supra note 1, the vehicle at issue displayed an Oregon license plate.[4]  J.A. 128, 352.  Therefore, Johnson did not fall within the general exemption contained in § 56-3-150(A) – his pickup truck was not registered or licensed in the state of his purported residency, Illinois or North Carolina.[5]  Johnson was thus "otherwise subject to registration and license" under § 56-3-150(B), which required him to register and license his vehicle if he became a domiciliary of South Carolina or if he operated his pickup truck in South Carolina in excess of 150 days.[6]

The Equal Protection Clause states, in relevant part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.

_____

[4] Johnson admits that he established his residency and domicile in South Carolina on January 7, 2005 (though he claims to have done so under duress from the defendants' enforcement of the vehicle registration statutes) and there is no question that he was required to register his vehicle in that state under 56-3-150(B) upon doing so.

[5] There is no evidence in the record that Johnson was at any relevant time a resident of Oregon.

[6] The validity of the County's determination that Johnson had in fact operated the vehicle in South Carolina in excess of 150 days is not before us, but we note that Johnson admitted having been at one of his residences in Horry County about fifteen times per month.  J.A. 115.

amend. XIV, § 1. "The Clause requires that similarly-situated individuals be treated alike." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)). "Under an Equal Protection analysis, courts generally hold that 'legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.' Id. at 302-303 (quoting Cleburne, 473 U.S. at 440).

As discussed by the district court, we disagree with Johnson's assertion that non-residents receive disparate treatment under the vehicle registration statutes. Clearly, § 56-3-160 only applies to residents and cannot, therefore, subject non-residents to disparate treatment. Section 56-3-150(B), in contrast, does not apply to residents at all; it simply treats certain non-residents (those who operate a vehicle in the state in excess of 150 days without valid registrations from their state of residence) the same as South Carolina residents. Johnson, as a non-resident driving a vehicle on the roads of South Carolina without a valid registration from his state of residence, is not similarly situated with South Carolina residents. Likewise, Johnson is not similarly situated with those nonresident drivers who do travel to South Carolina for employment but maintain a valid vehicle registration in their state of residence (and who are thus exempted from

10

registering their vehicle in South Carolina by § 56-3-150(A)). A nonresident does not "move" into the state merely by crossing the state line; the term plainly contemplates a fixed rather than transitory status.

Moreover, a nonresident subject to the vehicle registration statutes is not being treated differently than a resident. The crux of Johnson's complaint is not that he is being subject to a different obligation from South Carolina residents (the registration and payment of property tax on his vehicle), but that he is being subjected to those obligations. In essence, he seeks to be treated differently from South Carolina residents.

For the same reasons set forth above we also agree with the district court that "the statutes do not unconstitutionally burden the right to interstate travel." J.A. 358. South Carolina undoubtedly has a strong interest in regulating the vehicles on its roadways and Johnson has not carried his "burden 'to negate every conceivable basis which might support' the legislation." Giarratano, 521 F.3d at 303 (quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973)). The vehicle registration statutes only apply to those who move to South Carolina or who, like Johnson, avail themselves, for more than 150 days, of the use of South Carolina's roadways while operating a vehicle that is not registered in their own state of residence. Contrary to Johnson's assertions, the statutes do

11

not significantly infringe on "the right of a citizen of one State to enter and to leave" South Carolina, <u>Saenz v. Roe</u>, 526 U.S. 489, 500 (1999), or discriminate "against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." <u>Toomer v. Witsell</u>, 334 U.S. 385, 396 (1948). In short, Johnson may travel across South Carolina unimpeded so long as he abides by the reasonable and minimally burdensome regulations necessary to protect the safety of that state's citizens.

Finally, we find no merit in Johnson's contention that the vehicle registration statutes violate the dormant commerce clause.

> The Commerce Clause states, "The Congress shall have Power ... To regulate Commerce . . . among the several States," U.S. Const. art. I, § 8, cl. 3, and it is well-established that this affirmative grant of authority implies a "negative" or "dormant" constraint on the power of the States to enact legislation that interferes with or burdens interstate commerce. <u>See Dennis v. Higgins</u>, 498 U.S. 439, 447, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991) ("It is also clear, however, that the Commerce Clause does more than confer power on the Federal Government; it is also a substantive restriction on permissible state regulation of interstate commerce" (internal quotation marks and citation omitted)).

<u>Brown v. Hovatter</u>, 561 F.3d 357, 362–63 (4th Cir. 2009).

Determining whether a state law violates the dormant Commerce Clause involves a two-tiered analysis. <u>Id.</u> at 363.

12

The first inquiry is "whether the state law discriminates against interstate commerce." Id. (emphasis omitted). In this context, "'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Oregon Waste Systems, Inc. v. Dep't of Env'tl Quality, 511 U.S. 93, 99 (1994) (emphasis added). If the state law is nondiscriminatory, a court asks whether it "unjustifiably burdens interstate commerce." Brown, 561 F.3d at 363. The law "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).

The district court properly rejected Johnson's claim that requiring nonresidents to register their vehicles after they are determined to be a resident pursuant to South Carolina law constitutes a discriminatory trade barrier prohibited by the dormant Commerce Clause. The vehicle registration statutes are directed at activity in South Carolina, not elsewhere, and they do not discriminate between in-state and out-of-state interests.

South Carolina's registration requirements do not impose a disproportionate burden on interstate commerce. If anything, South Carolina's vehicle registration requirements burden in-

13

state residents, not vice-versa.[7]  See Am. Trucking Assocs., Inc. v. Mich. Public Serv. Comm'n, 545 U.S. 429, 434 (2005) (upholding fee assessed only against intrastate transactions). As the district court observed, the vehicle registration statutes "are necessary to insure public safety."  J.A. 359 (quoting Arizona v. Richey, 762 P.2d 585, 587 (Ariz. Ct. App. 1988)).  As such, they are nothing more "than an unobjectionable exercise of the State's police power."  Am. Trucking Assocs., 545 U.S. at 434.

For the foregoing reasons, South Carolina Code Ann. § § 56-3-150(B) and 56-3-160 are constitutional, both facially and as

---

[7] Although the district court did not mention it, we note the record contains no factual evidence that the registration requirement "imposes any significant practical burden upon interstate trade."  Am. Trucking Assocs., 545 U.S. at 434. Johnson has thus not shown that the vehicle registration statutes "involve burdens placed on the interstate movement of goods, materials, or other articles of commerce."  Brown, 561 F.3d at 365.

14

applied.[8]    Accordingly, we affirm the judgment of the district court.

AFFIRMED

[8] Because we find the vehicle registration statutes at issue constitutional, we need not address the district court's alternative finding that, even if the statutes were unconstitutional, the individual defendants would be entitled to qualified immunity and Horry County was not subject to liability under Monell v. Dep't. of Soc. Servs., 436 U.S. 658 (1978).  We note, however, that the defense of qualified immunity only "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"    Pearson v. Callahan, 555 U.S. ___, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (emphasis added)).   The defense is not available in "cases against individuals where injunctive relief is sought instead of or in addition to [monetary] damages."   Id. at 822 (emphasis added).   Thus, while the defense of qualified immunity may have protected the individual defendants from judgment awarding money damages, a determination of the constitutionality of the statutes was still required because Johnson also sought "[a] preliminary and permanent injunction enjoining [Horry County] and [the] Individual County Defendants from executing established practices and procedures enforcing" the vehicle registration statutes.  J.A. 35 (emphasis omitted).