LILLEHAUG, Justice.
*531 Respondent Walgreens Specialty Pharmacy, LLC ("WSP") requested refunds from the Department of Revenue for taxes paid under Minnesota's Legend Drug Tax, see Minn. Stat. § 295.52, subd. 4 (2016), on transactions between WSP's non-resident pharmacies and Minnesota-based patients and doctors. Relator Commissioner of Revenue ("Commissioner") denied the requested refunds. WSP sought relief from the Minnesota Tax Court, arguing that the Legend Drug Tax did not apply to the transactions at issue. The tax court agreed with WSP and granted its motion for summary judgment. We reverse.
FACTS
The facts underlying this appeal are not in dispute. WSP is a single-member limited liability company, organized under the laws of Delaware and headquartered in Florida.[1] WSP is a wholly owned subsidiary of Walgreen Company ("Walgreens"), which is incorporated in Illinois. During the tax years at issue, 2008-2013, WSP operated a retail pharmacy business, selling specialty drugs used to treat chronic, rare, and complex medical conditions. WSP owned and operated retail pharmacy locations in New Jersey (now closed), Massachusetts (now closed), Michigan, Oregon, Pennsylvania, and Texas-but not in Minnesota. The Minnesota Board of Pharmacy licensed all of those locations to dispense legend drugs[2] to Minnesota residents.[3] WSP did not own or rent any property in Minnesota, and did not employ anyone in Minnesota.
Walgreens employed a representative in Minnesota to promote the services of WSP to doctors, medical-practice managers, hospitals, *532 and others. WSP contracted with health-plan companies and others in Minnesota to sell legend drugs prescribed by Minnesota healthcare providers to customers in Minnesota. Minnesota customers could also order refills from WSP for prescribed legend drugs, through a common website shared by Walgreens and WSP. During the tax years at issue, WSP filled for Minnesota-based customers hundreds of thousands of prescriptions worth hundreds of millions of dollars.
WSP filled these prescriptions from its inventory of legend drugs obtained from wholesalers and manufacturers, licensed and unlicensed, located outside of Minnesota. WSP delivered the prescribed drugs to a common carrier (such as UPS or FedEx), which then shipped the legend drugs to Minnesota-based customers-either to the customer's home or, if the drug was to be administered by a doctor, to a treatment facility.
WSP filed amended tax returns for the tax years at issue, requesting refunds of the 2-percent legend-drug taxes paid on its wholesale cost for the legend drugs sold to Minnesota-based customers during those years. The Commissioner denied the refund claims, and WSP appealed. The tax court concluded that the relevant transactions were not subject to the tax because WSP received the legend drugs outside of Minnesota. Walgreens Specialty Pharmacy, LLC v. Comm'r of Revenue , No. 8902-R, 2017 WL 5617609, at *8 (Minn. T.C. Oct. 16, 2017). In reaching this conclusion, the tax court acknowledged that subdivision 4(a) "provides that delivery of drugs within Minnesota can trigger liability for" the tax, but held that the statute imposes the tax "solely [on] the receipt of drugs." Id. at *10.
ANALYSIS
The first issue presented by this case is whether Minnesota's Legend Drug Tax applies to transactions between Minnesota-based customers and a non-resident pharmacy that receives drugs outside of Minnesota, fills prescriptions from Minnesota-based medical providers from those drugs, and uses a common carrier to ship the prescribed legend drugs to Minnesota-based customers. If so, we must then decide whether application of the tax comports with the Due Process and Commerce Clauses of the United States Constitution. On cross-motions for summary judgment, the tax court denied the Commissioner's motion and granted WSP's motion. We review a grant of summary judgment de novo. Montemayor v. Sebright Prods., Inc. , 898 N.W.2d 623, 628 (Minn. 2017). Here, we review de novo the tax court's application of the law to the undisputed facts. Chapman v. Comm'r of Revenue , 651 N.W.2d 825, 830 (Minn. 2002).
I.
We turn first to the question of whether the Legend Drug Tax applies to the transactions at issue here. The Legend Drug Tax is one of several MinnesotaCare provider taxes, under which a 2-percent tax is levied on the gross revenues of hospitals, surgical centers, wholesale drug distributors, and on the price paid (here, the wholesale cost) by those who receive or deliver legend drugs in Minnesota. Minn. Stat. § 295.52 (2016).[4] WSP contends that the Legend Drug Tax, properly construed, applies only to the receipt of legend drugs in Minnesota. The Commissioner argues that liability for the Legend Drug Tax is imposed on in-state receipt or delivery of *533 the drugs. The parties' dispute requires that we interpret the Legend Drug Tax, Minn. Stat. § 295.52, subd. 4.
"The objective of statutory interpretation is to ascertain and effectuate the Legislature's intent." State v. Struzyk , 869 N.W.2d 280, 284 (Minn. 2015) (citation omitted). "The first step in statutory interpretation is to 'determine whether the language of the statute, on its face, is ambiguous.' " 500, LLC v. City of Minneapolis , 837 N.W.2d 287, 290 (Minn. 2013) (quoting Larson v. State , 790 N.W.2d 700, 703 (Minn. 2010) ). "A statute is ambiguous if it is susceptible to more than one reasonable interpretation." Id. (citation omitted). If a statute is ambiguous, we may look to canons of construction to ascertain its meaning. Id. But when the intent of the Legislature is clear from the unambiguous language of the statute, we apply the statute according to its plain meaning. Id. We interpret statutes to give effect to all of their provisions and assume that the Legislature does not intend to enact unconstitutional statutes. See Minn. Stat. §§ 645.16, .17(3) (2016).
We conclude that the plain language of the statute at issue here encompasses out-of-state pharmacies that deliver legend drugs to Minnesota-based customers for use in Minnesota. The statute states:
Subd. 4. Use tax; legend drugs. (a) A person that receives legend drugs for resale or use in Minnesota, other than from a wholesale drug distributor that is subject to tax under subdivision 3, is subject to a tax equal to the price paid for the legend drugs multiplied by the tax percentage specified in this section. Liability for the tax is incurred when legend drugs are received or delivered in Minnesota by the person.
(b) A tax imposed under this subdivision does not apply to purchases by an individual for personal consumption.
Minn. Stat. § 295.52, subd. 4.[5]
The first sentence of subdivision 4(a), standing on its own, identifies who is "subject to" the tax: persons that receive legend drugs. This sentence also describes the taxable activity: receipt of legend drugs "for resale or use in Minnesota." The second sentence of subdivision 4(a) identifies when "[l]iability" for the tax is incurred: when that person "receive[s] or deliver[s]" legend drugs "in Minnesota." Id. Reading these two sentences together, and giving effect to all of their words, as we must, see State v. Prigge , 907 N.W.2d 635, 638 (Minn. 2018) (citing State v. Riggs , 865 N.W.2d 679, 683 (Minn. 2015) ("[W]e construe a statute as a whole and interpret its language to give effect to all of its provisions.") ), the plain language of subdivision 4(a) establishes that the Legend Drug Tax applies: (1) to a person who receives legend drugs for resale or use in Minnesota (2) when that person receives or delivers those drugs in Minnesota.[6] See also Minn. Stat. §§ 645.08(1) (2016) (requiring that we construe "words and phrases ... according to the rules of *534 grammar"), 645.16 (requiring that we "give effect to all" of a statute's provisions).
With these two elements of the statute in mind, we now consider whether WSP's transactions with Minnesota-based customers are subject to Minnesota's Legend Drug Tax. First, there is no question that WSP received legend drugs for resale or use in Minnesota. WSP operated out-of-state pharmacies and filled prescriptions from Minnesota by taking prescribed drugs from its drug inventories to do so, meaning the prescribed drugs would be used or resold in Minnesota. The first element of subdivision 4(a) is met.
As for the second element, there is no dispute that WSP then delivered the drugs to Minnesota-based customers by common carrier. The issue then is whether, by delivering drugs to Minnesota-based customers by common carrier, WSP thereby "delivered" the legend drugs "in Minnesota" as stated in subdivision 4(a). See Minn. Stat. § 295.52, subd. 4(a).
"Deliver" is not defined in chapter 295, which governs the MinnesotaCare provider taxes. See Minn. Stat. § 295.50 (2016) (providing the definitions that apply to Minn. Stat. §§ 295.50 -.59 (2016) ). But we find helpful guidance in other uses of the word "deliver" in this chapter. First, the phrase "delivered outside of Minnesota" is defined as:
property which the seller delivers to a common carrier for delivery outside Minnesota, places in the United States mail or parcel post directed to the purchaser outside Minnesota, or delivers to the purchaser outside Minnesota by means of the seller's own delivery vehicles, and which is not later returned to a point within Minnesota, except in the course of interstate commerce.
Id. , subd. 2a. Although this definition addresses delivery "outside of Minnesota," it recognizes that "delivery" encompasses a seller's use of a common carrier. See also Minn. Stat. § 297A.66, subd. 1(b) (2016) (defining the "[d]estination of a sale" as the "location to which the retailer makes delivery ... or causes the property to be delivered ... by any means, including ... a for-hire carrier").
Second, section 295.50, subdivision 3(4), defines gross revenues as the "total amounts received in money or otherwise by: ... a wholesale drug distributor for sale or distribution of legend drugs that are delivered in Minnesota by the wholesale drug distributor, by common carrier , or by mail. ..." Minn. Stat. § 295.50, subd. 3(4) (emphasis added). This provision explicitly includes drugs delivered by common carrier. Here again, although the context is slightly different-delivery by a wholesale drug distributor-the other uses of "deliver" in chapter 295 suggest that "delivered in Minnesota by the person," as used in subdivision 4(a), includes delivery by a common carrier.[7]
Dictionary definitions, too, help us interpret "deliver." The word "deliver," used as a transitive verb in the statute, is defined as "[to] yield possession or control of" and "[to] make delivery of." Webster's Third New International Dictionary 597 (2002); see also Delivery, Black's Law Dictionary (9th ed. 2009) ("[T]he giving or yielding possession or control of something to another."). Another source defines the verb "deliver" as "to bring or transport to the proper place or recipient; distribute." The *535 American Heritage Dictionary of the English Language 480 (5th ed. 2011).
Did WSP give or yield possession of, or bring, transport to, or distribute, legend drugs to people "in Minnesota?" Most certainly, yes. Even though the legend drugs were delivered by common carrier, rather than by WSP's own employees or using WSP's own vehicles, those drugs were still delivered "by" WSP to Minnesota. "By," as used in the statute, is a preposition. It is defined as "through the means or instrumentality of," Webster's , supra , at 307, and "[t]hrough the agency or action of," The American Heritage Dictionary , supra , at 255. See, e.g. , Olympia Brewing Co. v. Comm'r of Revenue , 326 N.W.2d 642, 647 (Minn. 1982) (stating, in an income tax case, that "distinguish[ing] between a sale within or without the state on the basis of the mode of transportation-whose truck does the transporting-is an untenable distinction.").[8] When a Minnesota customer orders legend drugs from WSP, a licensed pharmacy, WSP has an interest in ensuring actual delivery of the drugs ordered, whether by its own employees or by a common carrier, to that customer.[9] We conclude, therefore, that "delivered ... by the person" plainly and unambiguously includes WSP's deliveries by common carrier to Minnesota.
The tax court reached a different conclusion. The tax court recognized that the first sentence of subdivision 4(a) subjects "a person who takes possession of legend drugs destined for resale or use in Minnesota" to the tax, but then read this sentence solely as a tax on an "activity," specifically "the receipt of drugs." 2017 WL 5617609, at *6. Next, although recognizing that the second sentence in subdivision 4(a) imposes liability for the tax when the person either takes possession of or transfers drugs within Minnesota, id. at *7, the tax court concluded that subdivision 4(a) "does not impose a tax" on distribution or delivery of those drugs. Id. at *8 (stating "the statute taxes only the act of receiving legend drugs"). The tax court concluded that the second sentence thus functioned only as "geographic conditions precedent" that imposed limitations on the first sentence, id. at *7, and that the phrase in the second sentence, "delivered in Minnesota,"
*536 is "an anachronism." Id. at *10. We disagree.
When interpreting statutes, we do not read the sentences of a subdivision in isolation but rather as a harmonious whole. See Prigge , 907 N.W.2d at 638. The tax court read the first sentence to encompass a single activity (receipt) on a worldwide basis, thus failing to give effect to the specific geographic limitation in that sentence "for resale or use in Minnesota ." The tax court also stripped the phrase "delivered in Minnesota" out of the second sentence, thus converting the legislative alternatives to a single element, receipt. Finally, the tax court read the second sentence of subdivision 4(a) in light of the first, but did not read the first sentence in light of the second. Reading subdivision 4(a) as a whole, and giving effect to all of its words, as we must, it is clear that the Minnesota's Legend Drug Tax is imposed when a person receives or delivers "in Minnesota" legend drugs that are for resale or use "in Minnesota." See McNamara v. D.H. Holmes Co. , 505 So.2d 102, 105 (La. App. 1987) ("The use tax is levied on all tangible personal property imported from other states for use, consumption, distribution or storage in Louisiana just as if the articles have been sold at retail."), aff'd , 486 U.S. 24, 31, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988) (accepting "this construction of state law"). The Legend Drug Tax, therefore, applies to the wholesale cost from the transactions at issue here.
In sum, the plain language of the statute leads us to conclude that WSP received legend drugs intended for resale or use in Minnesota and incurred liability for the Legend Drug Tax because those drugs were "delivered in Minnesota by" WSP.
II.
We turn next to the question of whether the application of the Legend Drug Tax to WSP's drug deliveries to Minnesota residents violates the Due Process Clause of the United States Constitution. U.S. Const. amend. XIV, § 1. For a use tax[10] to comport with due process, there must be "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax" and the "income attributed to the State for tax purposes must be rationally related to values connected with the taxing State." Quill Corp. v. North Dakota , 504 U.S. 298, 306, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (citation omitted) (internal quotation marks omitted).[11] In Quill , the Supreme Court held that there were sufficient contacts with a taxing state when a mail-order company purposefully directed its activities at a state's residents. Id. at 308, 112 S.Ct. 1904. Quill controls here. WSP purposefully directed its activities at Minnesota residents by filling prescriptions for legend drugs, ordered by Minnesota *537 healthcare providers, for Minnesota-based customers, and delivering the prescribed drugs to Minnesota-based customers. Minnesota-based customers could also use WSP's website to obtain refills of the prescribed legend drugs, and a Walgreens representative based in Minnesota, acting on WSP's behalf, verified delivery locations to Minnesota-based customers. The imposition of a use tax on WSP's transactions involving the delivery of prescribed legend drugs to Minnesota-based customers, therefore, does not violate the Due Process Clause.[12]
III.
We turn next to the question of whether the application of the Legend Drug Tax to WSP's drug deliveries to Minnesota residents violates the Commerce Clause of the United States Constitution as being internally inconsistent. A tax may comport with the Due Process Clause yet still violate the Commerce Clause. Quill , 504 U.S. at 313-14 n.7, 112 S.Ct. 1904. Thus, the analytical framework for each clause is distinct. Id. at 305, 112 S.Ct. 1904. The focus of the Commerce Clause is "structural concerns about the effects of state regulation on the national economy." Id. at 312, 112 S.Ct. 1904.
The affirmative grant of power to Congress to "regulate Commerce ... among the several States," U.S. Const. art. I, § 8, cl. 3, contains a "negative command ... that states cannot ... discriminate against or unduly burden interstate commerce," Luther v. Comm'r of Revenue , 588 N.W.2d 502, 510 (Minn. 1999) (citing Quill , 504 U.S. at 312, 112 S.Ct. 1904 ). A tax comports with the Commerce Clause so long as the tax: "(1) applies to an activity with a substantial nexus with the taxing State, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services the State provides." South Dakota v. Wayfair, Inc. , --- U.S. ----, ----, 138 S.Ct. 2080, 2091, --- L.Ed.2d ---- (2018) (citing Complete Auto Transit, Inc. v. Brady , 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977) ); see Mayo Collaborative Servs., Inc. v. Comm'r of Revenue , 698 N.W.2d 408, 412-24 (Minn. 2005) (applying the Complete Auto test).
Whether a tax is fairly apportioned or discriminates against interstate commerce can be determined by application of the "internal consistency" test. See Am. Trucking Ass'ns., Inc. v. Mich. Pub. Serv. Comm'n , 545 U.S. 429, 437-38, 125 S.Ct. 2419, 162 L.Ed.2d 407 (2005) (applying the internal consistency test to determine whether a tax comported with the Commerce Clause); Okla. Tax Comm'n v. Jefferson Lines, Inc. , 514 U.S. 175, 185, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995) (holding that a tax on ticket sales made within the state for travel originating from that state did not violate the internal consistency test). The Supreme Court has succinctly described the test as "What would happen if all States did the same?" Am. Trucking , 545 U.S. at 437, 125 S.Ct. 2419 (citation omitted). That is, if all states imposed the same tax with the result that inter state commerce is placed at a disadvantage over intra state commerce, a tax is not internally consistent and is unconstitutional. See Jefferson Lines , 514 U.S. at 185, 115 S.Ct. 1331.
*538 WSP contends that the Legend Drug Tax violates the Commerce Clause because the tax is not internally consistent. WSP argues that the Legend Drug Tax is internally inconsistent because a non-resident pharmacy could be taxed by two states for the same activity. To illustrate the purported problem, WSP proposes the following hypothetical, in which another state adopts the Legend Drug Tax:
A person that receives legend drugs for resale or use in Michigan ... is subject to a tax equal to the price paid for the legend drugs multiplied by the tax percentage specified in this section. Liability for the tax is incurred when legend drugs are received or delivered in Michigan by the person.
Under WSP's analysis, if Michigan adopted this tax structure, Michigan could tax WSP for receipt of legend drugs in Michigan, and Minnesota could tax WSP for delivery of its Michigan legend drugs to Minnesota. WSP, it argues, would be a "person that receives legend drugs for resale or use in Michigan" and "later ship[s] them by common carrier to a customer in Minnesota."
We disagree; the statute is not susceptible to WSP's interpretation. The taxable person's receipt of "legend drugs for resale or use in Michigan" is mutually exclusive of the taxable person's receipt of "legend drugs for resale or use in Minnesota." There is no internal inconsistency. Rather, like Minnesota's statute, WSP's hypothetical Michigan statute depends on receipt of legend drugs for resale or use in Michigan, and receipt or delivery of those drugs in Michigan. Thus, by the plain language of its Legend Drug Tax, Minnesota does not seek "more than its fair share of taxes from [an] interstate transaction." Id. The Legend Drug Tax, as we interpret it, does not violate the Commerce Clause.
CONCLUSION
For the foregoing reasons, the decision of the tax court is reversed.[13]
Reversed.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.
DISSENT

WSP is the successor in interest to four companies: Medmark, Schraft's, Walgreens Specialty-Illinois, and OptionMed. References to WSP include those four companies for the periods before WSP acquired them by merger or conversion.

A "legend drug" is defined as "a drug that is required by federal law to bear one of the following statements: 'Caution: Federal law prohibits dispensing without prescription' or 'Rx only.' " Minn. Stat. § 295.50, subd. 15 (2016). See also Minn. Stat. § 151.01, subd. 17 (2016) (defining "legend drug" as "a drug that is required by federal law to be dispensed only pursuant to the prescription of a licensed practitioner").

See Minn. Stat. § 151.19, subd. 1(a) (2016) (mandating that a license to operate a pharmacy be obtained from the Minnesota State Board of Pharmacy).

All MinnesotaCare provider taxes, including the Legend Drug Tax, will expire on December 31, 2019. Act of July 20, 2011, 1st Spec. Sess., ch. 9, art. 6, § 97, subd. 6, 2011 Minn. Laws 1154, 1291.

A "person" is defined as "an individual, partnership, limited liability company, corporation, association, governmental unit or agency, or public or private organization of any kind." Minn. Stat. § 295.50, subd. 9c (2016). There is no dispute here that WSP is a person for purposes of Minn. Stat. § 295.52, subd. 4.

The first sentence of subdivision 4(a) exempts from the tax transactions in which the person receives the drugs from a wholesale drug distributor that is subject to a tax under subdivision 3. This exemption does not apply here: WSP ordered and received legend drugs from wholesalers in transactions wholly outside Minnesota. See Minn. Stat. § 295.52, subd. 3 (imposing a tax on the gross revenues of wholesale drug distributors).

WSP argues that the Legislature's failure to define "delivered in Minnesota" to include by common carrier shows that it did not intend to encompass those deliveries in subdivision 4(a). We disagree. As we explain below, the plain and unambiguous meaning of "deliver" is broad enough to encompass in-state deliveries, including by common carrier.

In Olympia , we interpreted an income-tax statute to determine whether the language of the statute included sales to out-of-state customers. 326 N.W.2d at 644. Olympia is not dispositive here, in part because the statute at issue was susceptible to more than one interpretation and thus ambiguous. Id. at 645. Here, "delivered by the person" is not subject to the same syntactic ambiguity because there is one verb and one subject. The comment we made in Olympia , however, is consistent with the principle that, as a corporate entity, WSP can act only through its agents or instrumentalities. See, e.g. , Bank of U.S. v. Dandridge , 25 U.S. (12 Wheat.) 64, 92, 6 L.Ed. 552 (1827) (Marshall, C.J., dissenting) ("A corporation will generally act by its agents."). Here, the common carrier is simply WSP's agent or instrumentality. See also Ford Motor Co. v. Dir. of Revenue , 963 A.2d 115, 123 (Del. 2008) (rejecting the argument that none of the taxpayer's vehicles were "physically delivered to Delaware as all were sent by common carrier" to Ohio, noting that such an argument "elevates form over substance" because the taxpayer "controlled their ultimate delivery in Delaware" and "as a practical matter, ... caused deliveries to dealers in Delaware" (footnote omitted) ).

See, e.g. , Minn. Stat. § 151.19, subd. 1(g)(2) (2016) (requiring an out-of-state pharmacy to certify in an annual license application that its records of drugs dispensed to Minnesota residents are "readily retrievable from the records of other drugs dispensed"). Indeed, the parties stipulated that the legend drugs WSP sold to Minnesota residents "have special storage and handling requirements." A Walgreens representative based in Minnesota and acting on WSP's behalf "regularly called on" Minnesota customers to, among other things, "verify delivery locations."

Use taxes were introduced in the 1930s. Morton Bldgs., Inc. v. Comm'r of Revenue , 488 N.W.2d 254, 257 (Minn. 1992). After many states began imposing sales taxes on in-state transactions, consumers had an incentive to shop in states with lower or no sales taxes. Use taxes put in-state and out-of-state sellers on the same footing because the use tax is imposed when a consumer brings a good purchased in a state with lower or no sales tax into a state with a sales tax. Id. The tax court concluded that the "text of Subdivision 4(a) ... forecloses any argument that it imposes a use tax," despite also recognizing that "use," for purposes of a use tax, is " 'broadly defined.' " by the Legislature. 2017 WL 5617609, at *9 (quoting Morton Bldgs., Inc. , 488 N.W.2d at 258 ).

In South Dakota v. Wayfair, Inc. , the Court overruled Quill 's Commerce Clause physical-presence rule for a state to require a remote seller to collect and remit sales taxes. --- U.S. ----, ----, 138 S.Ct. 2080, 2099, --- L.Ed.2d ---- (2018).

WSP's argument concerning the Due Process Clause is premised on the tax court's interpretation of the statute. The tax court limited the statute with due process in mind after concluding that the first sentence imposed a tax on the receipt of legend drugs anywhere . Walgreens , 2017 WL 5617609, at *6. Because we correct the tax court's analysis of the statute, our interpretation of subdivision 4(a) does not raise the constitutional problem the tax court identified with its interpretation.

WSP asked that we remand this case to the tax court to allow it to assert a claim against its wholesale drug supplier. The Commissioner objects to this request. We agree that a remand is unnecessary because WSP has not demonstrated that a wholesale drug distributor had gross revenues for the "sale or distribution of legend drugs that are delivered in Minnesota by the wholesale drug distributor." Minn. Stat. § 295.50, subd. 3(4).