In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3051

CHRISTOPHER REGAN and
NORTHWEST INDIANA CREATIVE
INVESTORS ASSOCIATION, INC.,

*Plaintiffs-Appellants*,

*v.*

CITY OF HAMMOND, INDIANA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:16-cv-00098-JTM — **James T. Moody**, *Judge.*

ARGUED APRIL 3, 2019 — DECIDED AUGUST 19, 2019

Before WOOD, *Chief Judge*, and BAUER and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge.* The plaintiffs in this case press a dormant commerce clause challenge to a local ordinance that requires a residential property owner who wishes to make

repairs to the residence either to obtain a license or to hire a licensed contractor; but a homeowner making repairs to the single-family residence he or she occupies is exempted from this requirement. The plaintiffs argue that this scheme discriminates against interstate commerce and to that extent is contrary to the dormant commerce clause. But the ordinance draws no distinction between in-state or out-of-state property owners and imposes no burden on interstate commerce. We therefore affirm the district court's entry of summary judgment against the plaintiffs.

## I.

Plaintiff Christopher Regan lives in Cook County, Illinois, but owns real property in the City of Hammond, Indiana, that he leases or rents to others. The Northwest Indiana Creative Investors Association, Inc. ("NICIA") is a trade association for real estate investors who likewise own and lease real property in Hammond. As landlords, Regan and NICIA members naturally have the need to make periodic repairs and improvements to their Hammond properties. In order to repair or remodel their properties, the Hammond municipal code requires that they either obtain a license from the city or hire a Hammond-licensed general contractor. Hammond, Ind. Municipal Code §§ 150.15, 150.17. In order to obtain a license, a general contractor or landlord must, among other things, submit an application, pass a test and criminal background check, and pay a fee. (General contractors are subject to additional requirements and obtain a broader license.) The code makes an exception for an individual making repairs or improvements to a private, single-family residence in which he resides. Any work he performs will be subject to review and

inspection by the city building commissioner (as would licensed work), but he need not obtain a license in order to do the work. §§ 150.15, 150.17.

Regan and NICIA contend that the license requirement, coupled with the exemption, impermissibly burdens interstate commerce by imposing costs on property owners who, like Regan, do not reside in Hammond which locally-domiciled homeowners do not have to pay. That burden, they argue, is inconsistent with the dormant commerce clause. The district court disagreed and entered summary judgment for Hammond. *Regan v. City of Hammond, Ind.*, 331 F. Supp. 3d 798 (N.D. Ind. 2018). Judge Moody reasoned that the city's license requirement does not facially discriminate against property owners who do not live in Hammond, does not have a disparate impact on those owners, and is rationally related to the city's interest in public safety. *Id.*

## II.

The commerce clause gives Congress the power to regulate commerce among the states. U.S. Const. Article I, § 8, cl. 3. This provision "presumes a national market free from local legislation that discriminates in favor of local interests." *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 393, 114 S. Ct. 1677, 1683 (1994). The clause therefore comprises not only an affirmative authorization for Congress to regulate interstate commerce, but a corresponding restraint on the power of state and local governments to regulate that commerce. *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38, 128 S. Ct. 1801, 1808 (2008); *Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n*, 545 U.S. 429, 433, 125 S. Ct. 2419, 2422–23 (2005).

That restraint is referred to as the dormant commerce clause, and it precludes states and municipalities from erecting obstacles to interstate commerce even where Congress has not regulated. *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459–61 (2019); *Comptroller of Treasury of Md. v. Wynne*, 135 S. Ct. 1787, 1794 (2015); *Endsley v. City of Chicago*, 230 F.3d 276, 284 (7th Cir. 2000). The fact that a state or municipal law affects interstate commerce in some way is by itself insufficient to render the law suspect under the commerce clause, as almost any local regulation is bound to touch upon interstate commerce. *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1130–31 (7th Cir. 1995). "Dormant Commerce Clause doctrine applies only to laws that *discriminate* against interstate commerce, either expressly or in fact." *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 501 (7th Cir. 2017) (emphasis in original) (citing *Nat'l Paint*, 45 F.3d at 1130–31).

Our precedents place state and local laws into one of three categories for purposes of commerce clause analysis, depending on the degree to which they affect interstate commerce: (1) laws that expressly discriminate against interstate commerce; (2) laws that, although neutral on their face, bear more heavily on interstate than local commerce; and (3) laws that may have a mild effect on interstate commerce but in practice do not give local firms any competitive advantage over firms located elsewhere. *Park Pet Shop*, 872 F.3d at 501–02 (citing *Nat'l Paint*, 45 F.3d at 1131). A law falling into the first category is presumed to be almost per se unconstitutional and is subject to rigorous scrutiny that will allow the law to stand only if it serves a legitimate governmental interest and there is no

reasonable non-discriminatory means of furthering that interest. *Park Pet Shop*, 872 F.3d at 501 (citing *Nat'l Paint*, 45 F.3d at 1131); *see Davis*, 553 U.S. at 338, 128 S. Ct. at 1808; *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338–39, 127 S. Ct. 1786, 1793 (2007); *Or. Waste Sys., Inc. v. Dep't of Environ. Quality of State of Or.*, 511 U.S. 93, 100–01, 114 S. Ct. 1345, 1351 (1994). A law falling into the second category is analyzed according to its effect. If the impact is so strong that the law effectively operates as an embargo on interstate commerce, it is treated as the equivalent of a facially discriminatory law and is subject to the same demanding scrutiny given to such a law. *Id.* (citing *Nat'l Paint*, 45 F.3d at 1131). But if the law regulates even-handedly and only incidentally burdens interstate commerce, then it is examined under the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 847 (1970), to determine whether it is animated by a legitimate public purpose and, if so, whether the burden the law imposes on interstate commerce is excessive in relation to that interest. *Park Pet Shop*, 872 F.3d at 501–02; *see Davis*, 563 U.S. at 338–39, 128 S. Ct. at 1808–09; *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579, 106 S. Ct. 2080, 2084 (1986). A law falling into the third category is examined solely to determine whether it has a rational basis. *Park Pet Shop*, 872 F.3d at 502 (citing *Nat'l Paint*, 45 F.3d at 1131–32). The district court concluded that the Hammond ordinance falls into the third category and indeed is justified by a rational basis. We review its conclusion de novo. *Legato Vapors, LLC v. Cook*, 847 F.3d 825, 828–29 (7th Cir. 2017).

The plaintiffs are landlords, and as the ordinance concerns landlords, it draws no distinction between those who are domiciled in Hammond (or elsewhere in Indiana) and those who are not; *all* landlords are subject to the license requirement. So the landlord who lives in Chicago and owns a rental property in Hammond must obtain a license or hire a licensed contractor, but so must the landlord who lives next door to his Hammond rental. The ordinance imposes no impediment or burden for the non-Hammond landlord that it does not also impose on the Hammond landlord. There is no disparity in classification of local versus non-local landlords nor is there a disparity in how the two are impacted by the ordinance. *See Park Pet Shop*, 872 F.3d at 502 (municipal "puppy mill" ordinance that prohibits all large commercial breeders from selling domestic pets to local pet stores regardless of where breeder is located neither expressly discriminates against interstate commerce nor has disparate impact on out-of-state breeders).

It is only the exception the ordinance makes for occupant homeowners that causes the plaintiffs to complain that the ordinance is inconsistent with the dormant commerce clause, because by definition only a property owner who lives in Hammond can be an occupant of a Hammond residence. The occupant can, if he chooses, save himself the expense of obtaining a license or hiring a licensed contractor to make improvements to his property; and he is the only property owner who is given that option. But the exception is tied to occupancy of the property rather than the owner's domicile; a Hammond-based landlord will not qualify for the exception even if his tenant lives next door to him in the adjoining unit of a side-by-side duplex.

The premise of the plaintiffs' commerce clause challenge is that all owners of residential property in Hammond are participants and competitors in the national housing market, so that to give an occupant homeowner an exemption from the license requirement is to discriminate in favor of the occupant against the non-occupant homeowner, including in particular the landlord who is not domiciled in Hammond. But occupant homeowners are not similarly situated with landlords, as the district court recognized. The owner-occupant of a single-family home typically is not deriving rental income from his property, which means that he or she is not in meaningful competition with landlords. Yes, both own property, and both may ultimately sell that property in the national market, but during the term of their ownership, they are using the property for different purposes. Moreover, the occupant also bears the consequences of repairs or improvements made to his home in a way that a landlord does not. Of course, all repairs and improvements are reviewed by the Hammond building commissioner for compliance with municipal codes, so one may presume the alterations by the occupant owner are good enough to pass inspection; but compliance with local regulations does not ensure that the craftsmanship is sound, effective in resolving any problems that necessitated repairs, or sufficient to prevent future problems. And as between the occupant and the landlord, it is the former who will be without heat, water, a working kitchen, a watertight roof, or a sound staircase if the repairs or improvements are not made properly. The occupant and the landlord alike ultimately may suffer the economic consequences of bad work (a tenant might withhold rent or abandon the lease), but only the occupant actually

experiences the deterioration in living conditions with its attendant hardships and dangers. In the district court's words, "While resident homeowners will bear the risk of their own poor craftsmanship, building contractors and landlords impose the risk of faulty construction upon current or future tenants." 331 F. Supp. 3d at 805.

Given the material distinctions between occupant owners and landlords, the exception for occupant owners does not make the ordinance one that discriminates against non-Hammond property owners, so as to trigger a presumption of invalidity. "[L]aws that draw distinctions between entities that are not competitors do not 'discriminate' for purposes of the dormant commerce clause." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 95 (2d Cir. 2009) (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 49 (2d Cir. 2007)); *see Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298–300, 117 S. Ct. 811, 824–25 (1997). Hammond's ordinance does not impede interstate commerce in the sense that it poses an obstacle to non-residents who wish to invest in Hammond rental properties or imposes a sur-charge on such non-residents that is not imposed on local, similarly-situated investors. Nor does it otherwise impose a disparate burden on non-Hammond landlords so as to trigger the *Pike* analysis. As we have said, the ordinance treats all landlords the same, regardless of whether they are domiciled in Hammond. Consequently, the law falls into the third category, and is subject only to rational basis review.

And for the same reasons that occupant homeowners are not similarly situated to landlords, the license requirement and exemption easily survive deferential review. Hammond has an obvious interest in the safety and habitability of the homes in

which its residents live, and the ordinance is a legitimate exercise of its authority to promote that interest. The license requirement serves to ensure not only that whoever performs the work, be it the property owner or a contractor, is familiar with the local code requirements and is therefore capable of completing work in a sound manner that complies with those requirements, but that he lacks a criminal background that may place the property's owner or occupant in jeopardy of fraud. Insofar as the exemption for occupant homeowners is concerned, it is reasonable for the city to think that such homeowners, who have a keen interest in the adequacy of repairs and improvements made to their own homes, will also endeavor to comply with all local requirements.

## III.

Hammond's licensing ordinance does not discriminate based on the domicile of a homeowner in name or effect and has the support of a rational basis; it therefore poses no problem under the dormant commerce clause. The district court property granted summary judgment to Hammond.

AFFIRMED