In the

# United States Court of Appeals

## for the Seventh Circuit

No. 22-2050

JUAN FINCH, JR., and MARK TOIGO,

*Plaintiffs-Appellants*,

*v.*

MARIO TRETO, JR., Secretary of
the Illinois Department of Financial
and Professional Regulation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 22 C 1508 — **Rebecca R. Pallmeyer**, *Chief Judge.*

ARGUED SEPTEMBER 15, 2022 — DECIDED SEPTEMBER 22, 2023

Before SYKES, *Chief Judge*, and RIPPLE and KIRSCH, *Circuit Judges*.

SYKES, *Chief Judge*. In June 2019 Illinois legalized the recreational use of cannabis by enacting the Cannabis Regulation and Tax Act (the "Cannabis Act" or "Act"). 2019 Ill. Legis. Serv. P.A. 101-0027. The Act established a licensing system for cannabis dispensaries administered by the Illinois

Department of Financial and Professional Regulation. Applications for the first batch of licenses closed in January 2020, and by mid-2021 the Department had allocated 185 licenses pursuant to a review and lottery procedure. But the issuance of the licenses was stayed in connection with state-court litigation. The Department proposed a different set of rules for a second group of licenses in 2022.

The rules for the 2021 licenses established a point system that heavily favored applicants who were longtime residents of Illinois. The plaintiffs here—Juan Finch, Jr., and Mark Toigo—want to own or invest in cannabis dispensaries in Illinois, but neither of them lived in the state during the application period. Finch moved to Illinois in 2021 hoping to participate in the new market; Toigo did not relocate. Because neither was a longtime resident of Illinois, they thought it would be useless to apply for a license and did not do so. Instead, in March 2022 they filed this lawsuit raising a dormant Commerce Clause challenge to the residency provisions in the licensing regime. They also moved for a preliminary injunction halting the completion of the licensing process for the allocated 2021 licenses and enjoining the ongoing process for the 2022 licenses. The district court denied the motion, and the plaintiffs appealed. *See* 28 U.S.C. § 1292(a)(1).

We dismiss in part and affirm in part. The district judge's denial of the motion for a preliminary injunction cleared the way for the Department to issue the 2021 licenses, and it did so. That action largely moots this appeal. To the extent that some form of relief unwinding the licenses remains possible, the judge weighed the equities and held that the plaintiffs waited far too long to challenge the residency provisions. By

March 2022 when they filed this suit, the 2021 licenses had already been allocated on a conditional basis. The judge reasoned that an injunction would severely harm the reliance interests of those who had been awarded the conditional licenses and otherwise disrupt the orderly completion of the first-round licensing process. We see no basis to disturb that sensible equitable judgment.

The judge also declined to enjoin the ongoing process for the second batch of licenses. At the time of her ruling, the Department had not yet finalized the regulatory criteria for this second group. The judge held that the challenge to the 2022 licensing regime was unripe because the Department might remove the residency provisions or otherwise materially modify the criteria. That too was a sound decision. The Department has since finalized the 2022 rules and deleted the provisions favoring Illinois residents.

## I. Background

The district court's decision thoroughly explains the complicated regulatory background and the procedural history of this suit and the parallel state litigation. *Finch v. Treto*, 606 F. Supp. 3d 811, 816–24 (N.D. Ill. 2022). Only a summary is needed here. The Cannabis Act authorized the Department to issue up to 500 licenses to dispense recreational cannabis in Illinois. 410 ILL. COMP. STAT. 705/15-35.20(b). This case primarily concerns a preliminary form of the license that converts to a full license if the licensee satisfies certain conditions.

The Act authorized the Department to issue up to 75 licenses before May 1, 2020, and to allocate them across 17 distinct geographic regions of Illinois in proportion to

each region's population. *Id.* § 705/15-25(a), (c). The application deadline was January 1, 2020, *id.* § 705/15-25(b), and applicants had to submit voluminous documentary support with their applications and pay a nonrefundable $5,000 application fee, *id.* § 705/15-25(d). The Department received 937 applications by the deadline.

The Act directed the Department to allocate the licenses through a competitive point-based system. Each applicant could receive a maximum of 252 points. *Id.* § 705/15-30(c)-(d). Points were awarded to recognize strength in an applicant's proposal and to promote certain social goals. This case concerns the points awarded for Illinois residency: for this first batch of licenses, extra points were awarded to applicants who could establish Illinois residency, or the residency of a 51% owner, "in each of the past 5 years." *Id.* § 705/15-30(c)(5), (c)(8); § 705/1-10.

The Department scored the applications and determined that the number of applicants with a perfect score of 252 points far exceeded the number of licenses available in each of the 17 geographic regions. To address this dilemma, the Department decided to allocate the licenses via a lottery conducted among those with a perfect score. *Finch*, 606 F. Supp. 3d at 820–21. Around the same time, several applicants challenged the accuracy of the scoring process in state court, and the Department announced that it would conduct a deficiency-notice process before holding the tie-breaker lottery. *Id.*

In July 2021 while the deficiency-notice process was proceeding, the Illinois legislature amended the Cannabis Act to codify the tie-breaker procedure for the original 75 licenses and to establish two additional lotteries for 55 licenses each,

bringing the total number of 2021 licenses to 185. 410 ILL. COMP. STAT. 705/15-35, 705/15-35.10. All three lotteries were effectively limited to Illinois residents who had applied by the January 2020 deadline. The Department held the three lotteries in July and August 2021 and allocated all 185 licenses on a conditional basis in a final administrative decision on September 3, 2021.

Juan Finch and Mark Toigo both aspire to own a recreational cannabis dispensary in Illinois, but neither lived in the state at the time of the January 2020 application deadline for the first batch of licenses. Finch relocated to the state in December 2021 hoping to participate in the new Illinois cannabis market. Toigo remained a resident of Pennsylvania and from his home state has invested in cannabis-related businesses located in other states. Based on the residency provisions in the initial Illinois regulatory scheme, Finch and Toigo thought it would be futile to apply for a license and did not do so.

Instead, in March 2022 while the state litigation was still pending but well along the way toward resolution, Finch and Toigo filed this suit in federal court against Mario Treto, Jr., the Secretary of the Department, raising a challenge to the residency provisions under the dormant Commerce Clause. (They sued the Secretary in his official capacity, which amounts to a suit against the agency itself, *Connors v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021), so for simplicity we refer to the Department as the defendant.) The plaintiffs also sought a preliminary injunction halting the completion of the 2021 licensing process as well as the ongoing 2022 licensing process. As we've noted, by the time they filed suit, the 2021 conditional licenses had already been allocated, but

the Department had not yet issued them because the judge in the state-court case had issued a stay. The state judge lifted the stay in late May 2022, leaving the Department free to issue the 2021 licenses subject only to its commitment not to do so pending further order of the district court in this case. *Finch*, 606 F. Supp. 3d at 822.

The July 2021 amendments to the Cannabis Act had also directed the Department to issue at least 50 additional licenses on or before December 21, 2022. 410 ILL. COMP. STAT. 705/15-35.20(c). On March 25, 2022, just days after the plaintiffs filed the motion at issue here, the Department issued a proposed rule under which it would issue another 55 licenses in a lottery to be held sometime in 2022. *See* 46 Ill. Reg. 5127 (Mar. 25, 2022). The new rule contained slightly different residency provisions but continued to favor in-state applicants. *Id.* Under Illinois law the proposed rule would not become final until after a public-notice process and approval by the Joint Committee on Administrative Rules. 5 ILL. COMP. STAT. 100/5-6, 100/5-10.

In the meantime, the district judge addressed and denied the plaintiffs' motion for a preliminary injunction. *Finch*, 606 F. Supp. 3d at 844–45. In an exhaustive opinion, the judge concluded that the plaintiffs had established a likelihood of success on their claim that the residency provisions in the state's licensing regime could not survive constitutional scrutiny under the Supreme Court's dormant Commerce Clause jurisprudence. *Id.* at 830 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), and *Regan v. City of Hammond*, 934 F.3d 700, 703 (7th Cir. 2019)). She acknowledged, however, that the issue was murky and unsettled because federal law continues to prohibit cannabis distribu-

tion. *Id.* at 834–35. The judge also held that the plaintiffs had established, "at least in theory," that they would suffer irreparable harm in the absence of preliminary injunctive relief. *Id.* at 835.

Moving on to balance the equities, the judge weighed the harm to the plaintiffs if she denied the motion against the harm to third parties and the public if she granted it. At this step in the analysis, the judge ruled against the plaintiffs. She concluded that they waited far too long to file their suit—more than two years after the application deadline for the first batch of licenses and eight months after the lottery results were announced. *Id.* at 835–36. Under these circumstances, the judge reasoned that halting and unwinding the 2021 licensing process would cause undue harm to the holders of the allocated conditional licenses and to the public's interest in the orderly issuance of the first group of licenses. For these reasons, the judge declined to enjoin the finalization of the 2021 licenses, finding the request for preliminary injunctive relief too "sweeping" and "highly disruptive." *Id.* at 840.

The judge also declined to enjoin the ongoing 2022 licensing process, though for a different reason. Because the proposed administrative rule governing the 2022 licenses was not yet final and the residency provisions might be modified or deleted, the judge concluded that the plaintiffs' constitutional challenge was unripe. *Id.* at 843–44. With that, the judge gave the Department a green light to issue the already-allocated 2021 conditional licenses and to move forward with the 2022 licensing process.

The plaintiffs sought interlocutory review, as permitted by § 1292(a)(1) (authorizing interlocutory appeal of orders granting or denying injunctive relief).

## II. Discussion

Despite the regulatory complexity, the issue before us is narrow. There is no need for a detailed exploration of the state's cannabis-licensing regime or the merits of the plaintiffs' dormant Commerce Clause challenge. We need only examine the judge's equitable balancing of harms, and our review of that determination is quite deferential.

A preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a plaintiff must show that (1) he has some likelihood of success on the merits of his claim; (2) traditional legal remedies are inadequate; and (3) he would suffer irreparable harm without preliminary injunctive relief. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff establishes these threshold requirements, then the court must balance the equities, weighing the harm to the moving party if the requested injunction is denied against the harm to the nonmoving party and the public—including third parties—if it is granted. *Cassell*, 990 F.3d at 545.

"The party seeking a preliminary injunction bears the burden of showing that it is warranted." *Speech First*, 968 F.3d at 637. And because the legal standard for injunctive relief calls for equitable judgment, our standard of review is especially deferential: we will reverse only if we

find a clear abuse of discretion. *Cassell*, 990 F.3d at 545. A clear error of fact or law counts as an abuse of discretion. *Id.* But absent an error of that type, the district judge's decision is entitled to significant deference. *Id.*

Here the judge determined that the plaintiffs had established a likelihood of success on their dormant Commerce Clause challenge to the residency provisions in the state's initial licensing scheme for cannabis dispensaries. *Finch*, 606 F. Supp. 3d at 830–34. She also held that they had shown irreparable harm, "at least in theory." *Id.* at 835. Although the plaintiffs satisfied these prerequisites, the judge ultimately ruled against them after balancing the equities and finding that the scales tipped heavily against an injunction. As just explained, that equitable judgment is entitled to substantial deference on appeal, leaving the plaintiffs with a steep hill to climb.

Before proceeding, however, we must address a threshold jurisdictional question. The Department argues that the issuance of the 2021 licenses has mooted much of this appeal.

An appeal becomes moot when, because of an intervening event, the court cannot grant "any effectual relief whatever in favor of the appellant." *In re Bullock*, 986 F.3d 733, 738 (7th Cir. 2021) (quotation marks omitted); *see also Lauderdale-El v. Ind. Parole Bd.*, 35 F.4th 572, 575 (7th Cir. 2022) ("A case becomes moot when a court can no longer grant any redress for the alleged wrong."). When an appeal challenges the district court's denial of a preliminary injunction, "[o]nce the event in question occurs, any possible use for a preliminary injunction [has] expired." *A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, 683 F.3d 844, 845 (7th Cir. 2012).

The event Finch and Toigo primarily sought to prevent—the issuance of the 2021 conditional licenses—took place shortly after the district judge issued her decision, which largely moots their appeal of her refusal to enjoin it. The plaintiffs resist this conclusion, arguing that effective relief remains possible notwithstanding the issuance of the licenses. They suggest that the district judge could, on remand, order the Department to conduct a corrective lottery, effectively unwinding the 2021 licenses and starting the process over. The Department responds that the plaintiffs never sought a corrective lottery in the district court.

Setting aside the Department's procedural point, to the extent that the plaintiffs now argue for an injunction unwinding the issuance of the 2021 licenses and restarting the process—through a corrective lottery or otherwise—the judge sensibly ruled out any such relief. In balancing the equities, she concluded that the harm to the plaintiffs was vastly outweighed by the severe harm to the reliance interests of the license holders and to the public's interest in the orderly completion of the 2021 licensing process.

More specifically, the judge explained that plaintiffs "had ample time and opportunity to challenge the Cannabis Act's residency-related criteria sooner, but they waited until the eleventh hour to file suit." *Finch*, 606 F. Supp. 3d at 824. This eleventh-hour timing "threaten[ed] to completely disrupt a complicated administrative and judicial process" that had spanned more than two years and involved "numerous third parties" who had "participated and invested financially" in the application and lottery processes. *Id.* The judge gave significant weight to the interests of the winning applicants, all of whom had invested substantial time, effort, and ex-

pense in the application process and in preparing to open their businesses once the state court lifted its stay. *Id.* at 837–38.

On the other side of the ledger, the judge observed that the plaintiffs had "identified *no costs* that they have incurred during the administrative process or in reliance on the lottery results." *Id.* at 838. Rather, the plaintiffs basically "sat on the sidelines from June 2019, when the Cannabis Act was enacted, until March 2022, several months into the state court litigation over the Department's final administrative decision." *Id.* Their delay, the judge reasoned, was "substantial and inexplicable." *Id.* at 836.

After carefully balancing the equities, the judge reasonably concluded that enjoining the issuance of the 2021 licenses and ordering the Department to unwind and restart the application and lottery process would be a wholly inappropriate exercise of her equitable powers. *See* 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2022) ("A long delay by [a] plaintiff after learning of the threatened harm … may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction."). That was an eminently reasonable judgment.

The judge also declined to enjoin the continuation of the 2022 licensing process. She held that the plaintiffs' challenge was unripe because the Department's proposed administrative rule governing the 2022 licenses was not yet final and, in the end, might not contain residency criteria. *Finch*, 606 F. Supp. 3d at 843–44.

Ripeness doctrine prevents the premature adjudication of claims that are "premised on uncertain or contingent events." *Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 676 (7th Cir. 2019). Here the judge was understandably unwilling to weigh in on a nonfinal licensing rule that was subject (and perhaps likely) to change before final adoption, especially when postponing judicial review would cause no hardship to the plaintiffs. *See Metro. Milwaukee Ass'n of Com. v. Milwaukee County*, 325 F.3d 879, 882 (7th Cir. 2003) (explaining that ripeness doctrine focuses on "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration").

That too was a sound judgment. Indeed, the Department has since withdrawn the residency criteria. The rule governing the 2022 licenses is now final and awards no extra points for Illinois residency. 68 ILL. ADMIN. CODE tit. 68, § 1291.410. The plaintiffs' motion for preliminary injunctive relief was properly denied.

DISMISSED IN PART, AFFIRMED IN PART